## A. H. BULL STEAMSHIP CO. v. UNITED STATES.

### No. 62–52.

United States Court of Claims.

Decided Nov. 4, 1952.

J. Franklin Fort, Washington, D. C., (Radner, Zito, Kominers & Fort, Washington, D. C., on the briefs), for the plaintiff.

William A. Stern II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., (Ernest C. Baynard, Washington, D. C., on the brief), for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff purchased two ships from the Government under the Merchant Ship Sales Act of 1946, 50 U.S.C.A.Appendix, § 1735 et seq. In connection with the purchase it deposited $3,150 with the Government to pay for "desirable features." It now asserts that the Government's attempt to require it to pay for desirable features on the ships is not consistent with the formula contained in the Act for the calculation of the selling price of the ships.

The pertinent portions of the Merchant Ship Sales Act of 1946, 60 Stat. 41, as amended, 62 Stat. 1199, 50 App.U.S.C.A. § 1735 ff., 46 U.S.C.A. § 864a, are as follows:

Sec. 3. As used in this Act the term—

(a) 'Commission' means the United States Maritime Commission.

"(b) 'War-built vessel' means an oceangoing vessel of one thousand five hundred gross tons or more, owned by the United States and suitable for commerical use—

"(1) which was constructed or contracted for by or for the account of the United States during the period, beginning January 1, 1941, and ending with September 2, 1945; or

"(2) which, having been constructed during the period beginning September 3, 1939, and ending with September 2, 1945, was acquired by the United States during such period.

"(c) 'Prewar domestic cost', as applied to any type of vessel, means the amount determined by the Commission, and published by the Commission in the Federal Register, to be the amount for which a standard vessel of such type could have been constructed (without its national defense features) in the United States under normal conditions relating to labor, materials, and other elements of cost, obtaining on or about January 1, 1941. In no case shall the prewar domestic cost of any type of vessel be considered to be greater than 80 per centum of the domestic war cost of vessels of the same type.

"(d) 'Statutory sales price', as applied to a particular vessel, means, in the case of a dry-cargo vessel, an amount equal to 50 per centum of the prewar domestic cost of that type of vessel, and in the case of a tanker, such term means an amount equal to 87½ per centum of the prewar domestic cost of a tanker of that type, such amount in each case being adjusted as follows:

"(1) If the Commission is of the opinion that the vessel is not in class, there shall be subtracted the amount estimated by the Commission as the cost of putting the vessel in class.

"(2) If the Commission is of the opinion that the vessel lacks desirable features which are incorporated in the standard vessel used for the purpose of determining prewar domestic cost, and that the statutory sales price (unadjusted) would be lower if the standard vessel had also lacked such features, there shall be subtracted the amount estimated by the Commission as the amount of such resulting difference in statutory sales price.

"(3) If the Commission is of the opinion that the vessel contains desirable features which are not incorporated in the standard vessel used for the purpose of determining prewar domestic cost, and that the statutory sales price (unadjusted) would be higher if the standard vessel had also contained such features, there shall be added the amount estimated by the Commission as the amount of such resulting difference in statutory sales price.

"(4) There shall be subtracted, as representing normal depreciation, an amount computed by applying to the statutory sales price (determined without regard to this paragraph) the rate of 5 per centum per annum for the period beginning with the date of the original delivery of the vessel by its builder and ending with the date of sale or charter to the applicant in question, and there shall also be subtracted an amount computed by applying to the statutory sales price (determined without regard to this paragraph) such rate not in excess of 3 per centum per annum in the case of a vessel other than a tanker, and not in excess of 4 per centum per annum in the case of a tanker, for such period or periods of war service as the Commission determines will make reasonable allowance for excessive wear and tear by reason of war service which cannot be or has not been otherwise compensated for under this subsection. No adjustment,

except in respect of passenger vessels constructed before January 1, 1941, shall be made under this Act which will result in a statutory sales price which (1) in the case of dry-cargo vessels (except Liberty type vessels) will be less than 35 per centum of the domestic war cost of vessels of the same type, (2) in the case of any Liberty type vessel will be less than 31½ per centum of the domestic war cost of vessels of such type, or (3) in the case of a tanker will be less than 50 per centum of the domestic war cost of tankers of the same type. For the purposes of this Act, except section 5, all Liberty vessels shall be considered to be vessels of one and the same type.

"(e) 'Domestic war cost' as applied to any type of vessel means the average construction cost (without national defense features) as determined by the Commission, of vessels of such type delivered during the calendar year 1944, except in case of any type of vessel the principal deliveries of which were made after the calendar year 1944, there shall be used in lieu of such year 1944 such period of not less than six consecutive calendar months as the Commission shall find to be most representative of war production costs of such type.

\*   \*   \*   \*   \*   \*

"Sec. 12 (a) The Commission is authorized to reconvert or restore for normal operation in commercial services, \* \* \* including removal of national defense or war-service features, any vessel authorized to be sold or chartered under this Act. The Commission is authorized to make such replacements, alterations, or modifications with respect to any vessel authorized to be sold or chartered under this Act, and to install therein such special features, as may be necessary or advisable to make such vessel suitable for commercial operation on trade routes or services or comparable as to commercial utility to other such vessels of the same general type."

In Public Law 862, 80th Congress, 62 Stat. 1196, 1199, 46 U.S.C.A. § 864a, Congress added the following proviso to Section 3 (d) of the Merchant Ship Sales Act of 1946:

"\* \* \* *Provided further,* That hereafter the Commission may make allowances to purchasers of vessels for cost of putting such vessels in class, such allowances to be determined on the basis of competitive bids, without regard to the provisions of the last paragraph of section 3 (d) of the Merchant Ship Sales Act of 1946."

On January 7, 1951, the plaintiff and the United States Maritime Administration of the Department of Commerce, which had on May 24, 1950, succeeded to the functions of the Maritime Commission, made a contract for the sale to the plaintiff of two dry-cargo Liberty-type ships, the S. S. Morris Hillquit and the S. S. Henry L. Benning. The contract contained a provision that if it should be determined that the vessels lacked or contained desirable features as defined in clauses (2) and (3) of Section 3 (d) of the Act, the purchase price should be decreased, within the limits of the floor price of the vessels, or increased, by such amounts as the Maritime Administration might determine pursuant to the cited clauses of the Act. The Administration later estimated that certain heavier-than-usual booms on the two vessels were desirable features, and the plaintiff deposited $3,150 to pay for them. It now sues to get back the $3,150, asserting, as we have said, that under the statutory formula, for the calculation of the selling price of the vessels, the charge of $3,150 was not authorized.

The Merchant Ship Sales Act of 1946 was intended to fix, by a self-operating statutory formula, the selling price of the Government's surplus ships. Except for the matter of the existence and value of desirable features, which would in any event be a small factor in the price, the determination of the price was a mere mathematical calculation, once the then Maritime Commission had determined, for the type of vessel in question, the prewar

domestic cost and the war domestic cost of such vessels. It will be observed that, in the original Act of 1946, in Section 3 (d) (1) it was provided that there should be deducted from the "statutory sales price" the cost of putting the vessel in class. But in Section 12 (a) the Commission was authorized, itself, to have the vessels put in class, before selling them. The Commission seems to have followed this practice. When the vessel was put in class before it was sold there was, of course, no occasion for making the deduction authorized by Section 3 (d) (1). But apparently to avoid the necessity for appropriating the money necessary to put ships in class, Congress by Public Law 862, 80th Congress, 62 Stat. 1196, 1199, enacted the proviso to Section 3 (d) hereinbefore quoted. This proviso permitted the Commission to ascertain by taking competitive bids how much it would cost the purchaser to have the ship put in class, and then reduce the price by that amount below the "floor" price of the ship, which was done in the instant case, or below whatever price above the floor the statutory formula produced if, as rarely happened, it did result in a price higher than the floor price.

■ Our question relates to the "desirable features" provision of the statute. The plaintiff says that in the application of the statutory provisions they should be taken in the order in which they appear in the statute. As applied to the Benning, the computation would be as follows: The prewar domestic cost under 3 (c) was $1,278,000. Under 3 (d) the "statutory sales price" was $639,000, or 50 percent of the prewar domestic cost. Section 3 (d) (1) authorizing a deduction for the cost of putting the vessel in class would not be applied since the plaintiff asserts, and the Government's practice seems to confirm, that 3 (d) (1) was superseded by the proviso in Public Law 862 which authorized that deduction to be taken last. Section 3 (d) (2) would have no application since the Benning did not lack any desirable features. Section 3 (d) (3) would apply, and $2,200, the value of the desirable features present, would be added to the "statutory

sales price" of $639,000, giving the sum of $641,200. Section 3 (d) (4) providing for depreciation would apply, tentatively, to authorize a reduction of $271,558, but since that would carry the price below the statutory floor of 31½ percent of the domestic war cost, set by the last paragraph of Section 3 (d), the floor of $544,506, would be substituted. From the floor would be deducted the allowance for putting the ship in class, $118,721, leaving $425,785.

The practical effect of the plaintiff's method of adding the desirable features item to the statutory sales price at the beginning and then depreciating the sum is to make the item uncollectible in practically all cases, since the depreciation nearly always would carry the price below the floor, hence it is necessary to return to the floor. The desirable features item is thus lost somewhere under the floor, together with, it may be said, a large part of the depreciation.

The Government's method of calculation is to put to one side the desirable features item until the rest of the calculation is completed. By that time we have gone below the floor, via depreciation, but have returned to it, as required by the statute. Then the Government would add the desirable features item to the floor price, thus making it collectible in full.

The plaintiff, in support of its method of calculation, points first to the sequence of the statute itself. The Government says that the plaintiff is inconsistent since it would not agree that the deduction for putting the vessel in class should be taken first, although provision for that appears first in the statute, in 3 (d) (1). If that were done, the class adjustment subtraction from the statutory sales price would result in a price below the floor, and thus leave no room for any allowance for depreciation. Thus the plaintiff would pay the Government the statutory sales price less the class adjustment, and would pay the repair yard the amount of the class adjustment, the total cost being the statutory sales price with no reduction whatever for depreciation. By that method the plaintiff would have had to pay some $95,000 more for each ship. That is the basis of the

Government's alternative counterclaim, which it urges if we conclude that the plaintiff is right in its contention as to the desirable feature adjustment.

■ We think the Government's argument of inconsistency is not valid. If Section 3 (d) (1) were the controlling provision as to class adjustment, that would present a problem. But Section 3 (d) (1) had fallen into disuse due to the Commission's practice of itself causing the work to be done to put the ships in class before it sold them. When it did so, the statutory sales price was not affected, and there was still room for some depreciation allowance before the floor was reached. Then Congress, in Public Law 862, revived the class allowance but we think it made quite plain its intention that the class allowance should be deducted from the floor price, or from whatever higher price had been produced by the statutory calculation.

The Government urges that the effect of the plaintiff's calculation is to give it the desirable features for nothing. This is, in a sense, true. When an arbitrary uniform floor price is fixed by statute for some hundreds of ships of the same type but of different ages and conditions, one purchaser will of course get values which another purchaser will not get, though he pays the same price. For example, as to the two ships here in question, the Benning, because it was older and had had more war service than the Hillquit, had accumulated some $38,000 more of depreciation than the Hillquit. Yet all of that difference had to be disregarded because the floor price of the two ships was the same. Thus, if another person had bought the Hillquit, it might be said that he obtained some $38,000 worth of newness and sounder condition than had the plaintiff in buying the Benning, and that he had gotten all that additional value "for nothing." In truth he would have gotten it because the statute required that the selling price of the ships be calculated that way.

The plaintiff says that the Government is inconsistent in adding the charge for the presence of desirable features to the floor price but refusing to permit a deduction from the floor price for the absence of desirable features. It seems to be true that this was the Government's practice. We think the plaintiff's argument is valid. To turn the Government's expression about "something for nothing" against it, it could be said that in such a case a purchaser who paid the full floor price was paying, as to the lacking desirable features, "something for nothing."

■ Both parties urge that their position is required by, or is at least consistent with, the terms of the contract of purchase, the pertinent parts of which appear in Exhibit A of Exhibit 1 attached to the plaintiff's petition. We do not discuss the language of the contract in detail since we are convinced that the parties did not by their language intend to, and could not if they had intended to, change the plan prescribed by Congress for the sale of the ships.

The defendant's motion for summary judgment is denied. The plaintiff's motion for summary judgment is granted. The additional claims of the plaintiff presented in paragraph 12 of the petition will be held in abeyance pending the outcome of negotiations for their administrative settlement.

It is so ordered.

JONES, C. J., and HOWELL, WHITAKER and LITTLETON, JJ., concur.