ESSO NEDERLAND N. V., Formerly Named Standard Amerikaansche Petroleum Compagnie, N. V., Phs. Van Ommeren's Scheepvaartbedrijf N. V., and The Kingdom of the Netherlands

v.

The UNITED STATES.

No. 689–53.

United States Court of Claims.

May 8, 1957.

Roscoe H. Hupper, New York City, for plaintiffs. Norman M. Barron, Hervey C. Allen, New York City, and J. Franklin Fort, Washington, D. C., were on the brief.

Robert E. Mitchell, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Justin S. Colin, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This is an action by the Kingdom of the Netherlands and two Netherlands corporations on whose behalf the Kingdom says it acted in purchasing four T–2 tankers from the United States Maritime Commission. The plaintiffs sue for $288,143.59, the damages allegedly caused them by breach by the Commission of provisions of the contracts of sale.

The Kingdom of the Netherlands also purchased a large number of Victory ships from the Commission. The Government has filed a counterclaim in this case alleging that the Kingdom owes it $31,263.39 for desirable features on 11 of these Victory ships, for which desirable features the Kingdom agreed to

pay and has not paid. The plaintiffs have moved for a partial summary judgment dismissing the Government's counterclaim as to six of these 11 ships. The basis of the plaintiffs' motion is that as to six of the ships, the application of the pricing formula approved by this court in A. H. Bull Steamship Co. v. United States, 123 Ct.Cl. 520, leaves no room for liability for the alleged desirable features on those ships. The Government opposes this motion.

The Government moves for summary judgment on the whole of its counterclaim, asserting that the statutory pricing formula applied in Bull is inapplicable here because the statute applied only to citizen purchasers; that the Commission was free to make any contract it pleased with these foreign purchasers, and did make a contract requiring them to pay for desirable features; and that "desirable features" in the statute and the contract meant any features determined by the Commission to be desirable.

We consider first the plaintiffs' motion for dismissal of the counterclaim as to the six ships. In the Bull case we held that the provisions of section 3 of the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, § 1736, required that the charge for desirable features should be added to the statutory sales price before applying the statutory rate of depreciation. If, then, the depreciation carried the price below the floor price, the floor price which in any event would have been the lowest amount which the Commission could charge, even though there were no desirable features, would be the selling price, and the Commission would receive nothing for the desirable features. This was the situation with regard to the six ships as to which the plaintiffs' motion applies.

The plaintiffs concede that the Commission could have, in dealing with non-citizens such as the plaintiffs, set whatever price and terms of sale it pleased, regardless of the provisions of the Ship Sales Act applicable only to citizens. But, the plaintiffs argue, the Commission and the plaintiffs in fact agreed that the plaintiffs' purchases were to be on the terms and conditions of the Ship Sales Act. They say that they acquired, by contract, the same rights which we held in Bull to have been given to citizens by the statute.

The following provision in one of the plaintiffs' contracts here involved is typical of, though not exactly identical with, all of their contracts:

"The Buyer agrees, if it shall be determined by the Commission upon examination of the (each) vessel, that the vessel lacks or contains desirable features as defined in clauses (2) and (3) of Sec. 3(d) of the Act, then such purchase price shall be decreased, within the limits of the floor price of the vessel, *or increased, by such amounts, if any, as may be determined by the Commission pursuant to said clauses.*" (Italics added.)

At the times when the Commission transferred title to the ships to the plaintiffs, it had not yet made any determination as to desirable features. The plaintiffs, at those times, delivered to the Commission letters of understanding recognizing that the adjustment for desirable features was reserved for later determination. The following letter, which concerned four of the six ships here in question, was typical of all such letters:

"We understand that you have not yet made any determination as to whether the above vessel lacks or contains desirable features as defined in the Act. Accordingly, in order that closing of title to this vessel may not be delayed, the Netherlands Government hereby undertakes and agrees that if it shall be determined by the Commission upon examination that the said steamship * * * contains desirable features as defined in Clause (3) of Sec. 3(d) of the Act which have not heretofore been provided or paid for by the Netherlands Government, then the purchase price of said vessel *shall be increased by such amount, if any,*

*as may be determined by the Commission pursuant to said clause."* (Italics added.)

The six ships in question were purchased by the plaintiffs in 1946 and 1947. On various dates between March and November of 1952, the Maritime Administration, which was the legal successor to the Commission, rendered bills to the plaintiffs for alleged desirable features on the ships. Some of these bills were rendered before and some after our decision of the Bull case. The controversy between the various buyers and the Government as to the method of computation of charges for desirable features had existed for some years before our Bull decision. The plaintiffs declined to pay the bills rendered for desirable features, and, as we have said, the Government has counterclaimed for those amounts in this case.

The plaintiffs argue, in effect, that the whole of section 3 of the Ship Sales Act, including the order in which the several elements of the pricing formula should be applied, was incorporated by reference into their contracts. Therefore, they argue, our interpretation of section 3 in the Bull case was, in effect, written into their contracts.

The parties did not intend, of course, that our 1952 decision in Bull should be incorporated into their contracts written in 1946 and 1947. They did intend, in general, that sales to foreign governments, recent allies, should be on the same terms as sales to citizens. But the Commission intended that in sales to citizens as well as foreigners, desirable features charges should be added to the floor price. The plaintiffs were aware that this was the Commission's intention, because in the cases of five of the six ships in question, the sales price was depreciated below the floor, they were charged the floor price, and at the same time agreed that they would, in addition, pay for desirable features when the Commission got around to determining the value of such features.

The provisions in the contract documents which we have quoted earlier in this opinion do not incorporate the whole of section 3 into the contracts. They speak only of "desirable features as defined in clauses (2) and (3) of Sec. 3(d) of the [Ship Sales] Act." They say nothing as to any method of computation or order of application of the various items included in the whole of section 3. There is no foundation for the plaintiffs' argument for incorporation by reference except the general intent of both parties that foreigners were to be treated the same as citizens in these sales of ships. When the Government learned, from our Bull decision in 1952, how we thought citizens had to be treated under the statute, it decided that it would treat foreigners as it had all along thought that both citizens and foreigners should be treated.

■ We think that the general intention described above is not sufficient to override the specific intention which the parties both entertained, and which they wrote expressly into their contracts, that charges for desirable features were to be paid in addition to the already known floor prices of the ships. We will, therefore, overrule the plaintiffs' motion for a partial summary judgment dismissing the defendant's counterclaim as to the six ships.

We now consider the defendant's motion for summary judgment on its counterclaim for desirable features on 11 ships. As we have said, the basis for this motion is that whatever the Commission determines to be a desirable feature is, *ipso facto*, a desirable feature and must be paid for as such. In their reply to the Government's counterclaim the plaintiffs assert that the Commission "improperly and arbitrarily determined" that the features on the 11 ships were desirable, when they were not desirable "in fact or in law."

■ The Government has not persuaded us that Congress meant to impart finality to the determinations of the Commission that certain features are desirable. The statute says that "If the Commission is of the opinion that the vessel contains desirable features" there

shall be added, etc. This language is not strong enough to show a Congressional intention that the Commission's opinion should be completely unreviewable. The Commission's opinion would be an expert one, and would be presumptively right, of course. But there should be an opportunity for review of possible arbitrary action, or action not based upon substantial evidence.

The Government's motion for summary judgment on its counterclaim is overruled.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.