**OLYMPIC STEAMSHIP COMPANY,**
Inc., Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 3762.

United States District Court
W. D. Washington, N. D.

March 31, 1958.

Paul W. Steere, Skeel, McKelvy, Henke, Evenson & Uhlmann, Seattle, Wash., for plaintiff.

Charles P. Moriarty, U. S. Atty., Jacob A. Mikkelborg, Asst. U. S. Atty., Seattle, Wash., Graydon Staring, Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for defendant.

LINDBERG, District Judge.

This is an action brought under the Tucker Act, 28 U.S.C.A. § 1346 wherein it is alleged that the defendant sold and delivered to plaintiff the SS James A. Drain under the Merchant Ship Sales Act of 1946, 50 U.S.C.A.Appendix, § 1735 et seq. The conveyance was accomplished by a bill of sale from the United States Maritime Commission to plaintiff dated April 30, 1947. On August 12, 1948 plaintiff paid the defendant $6,239.-66 for certain "special features" admittedly attached to the ship. It is a part of this payment which the plaintiff now seeks to recover, contending that it was in excess of the "statutory sales price" and that it, the plaintiff, is entitled to recover such excess payment. Prior to the submission of the case to the court for decision on the merits the issues of law and fact involved were fully argued before the court under plaintiff's motion for summary judgment. This motion was made and based on the pleadings and also the affidavit of G. S. Cleverdon, Assistant Treasurer of the Olympic Steamship Co., Inc. The government vigorously resisted the motion and in opposition thereto filed an affidavit attaching a number of exhibits, including certified copies of a preliminary letter from the Mari-

time Commission to plaintiff, the contract of sale, bill of sale, and three letters subsequent to the bill of sale between the plaintiff and the Maritime Commission and Maritime Administration. After full consideration I denied the motion for summary judgment from the bench for the reason that there appeared to be an issue of material fact with respect to the question of duress. In denying the motion I indicated to the parties that I was of the opinion, granting plaintiff's contention that there was payment in excess of the lawful price, that if such payments had been voluntary and without protest or duress plaintiff could not recover. Thereafter the action was set down for pretrial conference as a result of which a comprehensive pretrial order was agreed upon between the parties and entered by the court. When the matter came on for trial plaintiff advised the court that it had concluded to offer no further evidence and the parties submitted the case for decision upon the pretrial order and the briefs theretofore filed in support of and in opposition to plaintiff's motion for summary judgment. Thus it will be seen that the case is before the court in substantially the same posture it was at the time of the argument upon motion for summary judgment.

Inasmuch as all of the facts to be considered by the court in reaching a decision have been either agreed to by the parties in the pretrial order or are established by the exhibits referred to and made a part thereof there is no need to set forth the facts in this memorandum opinion except as they may appear in outlining the reasons for my decision.

The plaintiff's contentions, as set forth in the pretrial order, are as follows:

"Under the Merchant Ship Sales Act the amount charged plaintiff for special features, $6,239.66 should have been added to the depreciated statutory sales price of $542,012.58 rather than to the statutory floor price of $544,506.

"2. The circumstances in existence at the time the payment for special features was demanded and paid were such that the payment was made under duress and made involuntarily.

"In addition, plaintiff opposes all of defendant's contentions."

I will consider plaintiff's second contention first and in so doing will assume for the purpose of discussion that the payment for special features should have been added to the depreciated statutory sales price rather than to the statutory floor price.

It would appear that the plaintiff in bringing its action relied upon the decision of the Court of Claims in the case of A. H. Bull Steamship Co. v. United States, 108 F.Supp. 95, 123 Ct.Cl. 520, decided November 4, 1952, and the later but similar case of Southeastern Oil Florida v. United States, 119 F.Supp. 731, 127 Ct.Cl. 409. The defense of estoppel or acquiescence because of voluntary payment apparently was not raised as a defense in either of those cases. While the reported decision in the Bull case, supra, does not reveal whether the payments were made under protest it is clear that protest was made at the time of payment in the Southeastern Oil case. Recognizing that the question of voluntary payment was not in issue in those cases plaintiff urges that the payment here made was under duress and therefore involuntary.

The Court of Appeals for the Ninth Circuit in the case of Shell Oil Co. v. Cy Miller, Inc., 53 F.2d 74, in considering whether a payment was involuntarily made because of duress quoted with approval the language of Justice Field in Radich v. Hutchins, 95 U.S. 210, 24 L.Ed. 409, as follows:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of

immediate relief than by making the payment."

The Court of Appeals then went on to cite the following cases: Lamborn v. County Commissioners, 97 U.S. 181, 185, 24 L.Ed. 926; Union Pac. R. Railroad Company v. Dodge County Commissioners, 98 U.S. 541, 543, 544, 25 L.Ed. 196; Little v. Bowers, 134 U.S. 547, 554, 10 S.Ct. 620, 33 L.Ed. 1016; Chesebrough v. United States, 192 U.S. 253, 259–260, 24 S.Ct. 262, 48 L.Ed. 432; United States v. New York & Cuba Mail S. S. Co., 200 U.S. 488, 494, 26 S.Ct. 327, 50 L.Ed. 569.

In this case it is admitted that plaintiff did not at the time of making payment nor at any time prior to June 30, 1953, almost eight months after the decision of the Court of Claims in the Bull case, supra, make a written or oral protest against the imposition of the charge for "special features". It would thus appear as a fair inference that plaintiff did not conceive that there had been an overpayment until after the decision in the Bull case.

Apart from circumstances the only evidence presented upon the issue of duress is the affidavit of G. S. Cleverdon submitted and relied upon by plaintiff in its motion for summary judgment. Countering this affidavit are the documents earlier referred to submitted by the defendant in opposition to plaintiff's motion and later admitted as true and correct by the plaintiff in the pretrial order. Upon such a record I can not make a finding of duress. Rather it appears to me that the evidence establishes that plaintiff was not acting under duress, express or implied, when any part of the payment was made.

We then come to the question of whether or not the transaction is governed by the well-settled rule that where money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying. See Annotations 53 A.L.R. 949, Restatement of the Law, Restitution, Section 45, Sealey & Scott's Notes on Restatement of the Law of Restitution.

At the time I denied plaintiff's motion for summary judgment I indicated my view that the case appeared to be governed by the rule just stated and that I thought that the holding of the Supreme Court in the case of United States v. Edmondston, 181 U.S. 500, 21 S.Ct. 718, 719, 45 L.Ed. 971, was controlling.

After the case was submitted for decision on the pretrial order and briefs submitted upon the motion for summary judgment without further evidence or argument I carefully reviewed the briefs and undertook independent research and reached the conclusion that my view as above stated was correct. However, before I had prepared a decision I received from plaintiff's counsel a letter enclosing copy of the very recent decision in Nautilus Shipping Corporation v. United States, Ct.Cl., 158 F.Supp. 353, 354. Inasmuch as certain language of this decision [1] indicated that the Court of Claims would not apply the rule

1. "The Merchant Ship Sales Act of 1946, supra, was an attempt on the part of Congress to provide for the sale of the Government's large accumulation of surplus ships at prices which could be calculated on the basis of a statutory formula. It was intended to relieve the Maritime Commission of the responsibility of haggling over prices, and of the criticism, embarrassment and possible scandal which might result if sales were individually negotiated. If that policy was to be carried out, the terms of the statute had to be adhered to, even though

litigation might be necessary to determine the proper construction of a rather complex statute. That did not leave any room for individual bargaining for terms contrary to the statute, nor much room for the application of such doctrines as estoppel and acquiescence. We have so held in prior decisions. See A. H. Bull Steamship Co. v. United States, 108 F. Supp. 95, 123 Ct.Cl. 520; Southeastern Oil Florida, Inc. v. United States, supra. We have regarded the formula set by the statute as comparable to a tariff setting public utility rates. One does not ir-

of Edmondston to a claim such as is here involved I again carefully reviewed the authorities cited as well as others and am still of the opinion that the ruling of the Supreme Court in Edmondston is applicable and controlling although further comment would appear appropriate. In the Edmondston case the Supreme Court was reviewing a judgment of the Court of Claims in favor of Edmondston and against the United States for the amount he was overcharged in the purchase of a quarter section of land. In its decision the court stated:

> "By the act of June 15, * * * the price of this tract was reduced from $2.50 to $1.25 per acre. The claimant paid the $2.50 without protest or question. He paid more than the law required him to pay. Can he recover the excess in this action in the court of claims?

> "The question thus presented is one of difficulty. If the parties to the transaction were both private individuals, it would clearly be a case of voluntary payment, and the amount overpaid would not be recoverable. If, for instance, the owner of a large body of land placed certain prices on different tracts thereof, and his agent, dealing with a purchaser of one of those tracts, charged him more than the price fixed by the principal, the purchaser paying the extra price without protest, and the principal accepting such payment, the transaction would not thereafter be open to inquiry in the courts, and the purchaser could not recover the extra sum which he had paid to the agent. But it is insisted that the relations between the government and its purchaser are not like those between two individuals,—that there is a constraining power in the government, a species of force or compulsion in

its action, which makes the payment of money by one purchasing land from it through its officers a payment not voluntary but an exaction, and therefore enables the purchaser to recover any excess in the price.

> "We may not enter into any discussion of the mere equities of this transaction, or the extent of the moral obligation resting on the government to repay a purchaser an excess in the price charged to and received from him. Our inquiry is limited to the question whether, in the statutes conferring jurisdiction on the Court of Claims, Congress has intended to acknowledge the liability of the government to every individual who has paid to any one of its officers a sum in excess of the legal charge for property or services and given to that court the power to render judgment against it for such excess."

The court then goes on at some length to review not only the consequences of allowing the judgment of the Court of Claims to stand, but numerous cases wherein recovery had been either allowed or rejected in accordance with a finding that payment had been voluntary or involuntary or allowed under provisions of statute. The court then reaches the following conclusion:

> "The conclusion we draw from these cases (and no others in respect to the ruling of the Land Department are referred to) is different from that drawn by counsel. That Congress has power in all cases to waive the question of voluntary payment, and provide that any mistake shall be corrected and any excess of payment refunded by the officer reviewing it, or recovered by an action in the Court of Claims, is undoubted; that, as shown by these references, it has made provision in certain cases for a refunding by the de-

revocably subject himself to an improper charge by estoppel or acquiescence or

mistake or ignorance of law or failure to protest."

partment which has received the money is obvious; and provided for such refunding irrespective of the question of voluntary payment. Now counsel would draw the inference that the question of voluntary payment has been waived by Congress in all cases of transactions between the government through its administrative officers and private individuals, except in customs cases, and that, if there be no specific provision for refunding by the department in which the mistake has occurred, the party may come into the Court of Claims and enforce his right to recover. Our conclusion is directly to the contrary, and that Congress, recognizing the rule of voluntary payment, believed that in certain instances it ought not to be enforced, and that the department which received money in excess of the legal charge or price should refund, and so legislated, intending to leave all other cases subject to express statutory requirement of protest, or to the ordinary and well-established rule as to the effect of voluntary payment."

The foregoing quotations leave little room for doubt that the general rule that voluntary payment is not recoverable is applicable to transactions with the United States, and I am unable to see any fundamental distinction between the equities involved in a transaction resulting in purchase of land at a statutory price, such as occurred in the Edmondston case, and one involving the purchase of a steamship at a statutory price, such as occurred in this case.

There are, of course, so-called exceptions to the general rule such as are referred to in the Restatement of the Law, Restitution, Sections 46–52. See also Art Center School v. United States, 142 F.Supp. 916, 136 Ct.Cl. 218.

The Court of Claims in the case of Gorman L. Schaible, 1956, 135 Ct.Cl. 890, by a per curiam opinion adopted the opinion and conclusions of a commissioner wherein he held that the doctrines of waiver and estoppel have no application with respect to public employees who seek full statutory compensation after having accepted less than lawful compensation without protest.

In reaching his conclusion the commissioner referred to eleven decisions, including the Edmondston case, cited in opposition, and sought to distinguish them in the following language:

"Eight of the 11 decisions cited by defendant are rate cases of one kind or another. Rate cases represent one field wherein the courts generally have made few, if any, exceptions to the rule which denies recovery for a mistake of law. In many other situations the exceptions have seriously eroded the rule. But in rate cases there is usually no evidence of great hardship if the parties are left where their transaction placed them, while there is always present the counterbalancing considerations favoring an end to accounting adjustments. Consequently, in claims for adjustments of rates which have been applied or accepted without protest, carriers and shippers are usually confronted with overriding elements of estoppel and waiver."

It is noteworthy that he did not distinguish the Edmondston case as such and it is apparent that it cannot be classified nor distinguished as a rate case. Neither I believe can the rule of Edmondston be ignored under the vague and shallow distinction that "In many other situations the exceptions have seriously eroded the rule."

It does appear from the language of the Court of Claims in Nautilus Shipping Corporation v. United States, supra, set forth in footnote (1), supra, that the court may have found the payment involved to be voluntary and did not believe the Edmondston case applicable but if so their reasoning is no more persuasive than that of the Commissioner in the Schaible case, supra.

On the other hand we find the Court of Claims in the recent case of Putnam Tool Co. v. United States, 1957, 147 F. Supp. 746, 137 Ct.Cl. 183, holding without citation of authority that the plaintiff who had paid six percent interest on its indebtedness to the government, resulting from war contract renegotiation, in the belief that the applicable renegotiation regulation fixing that rate was valid, could not recover after the regulation was subsequently declared invalid, because the payment had been voluntary. The reasoning of the court as there applied appears applicable to the facts and circumstances of the action presented here.

■ While I am uncertain as to the position the Court of Claims would take if this case were before it, it is my conclusion that the payment made by the plaintiff was voluntary and not under duress, that the Edmondston case is still the law and controlling as far as this court is concerned, that it is applicable to the situation here presented and that the overpayment being voluntary is not recoverable.

Judgment will be for defendant.