## MOORE–McCORMACK LINES, INC.
### v.
### UNITED STATES.
### Nos. 116–55 and 118–56.

United States Court of Claims.
April 7, 1961

J. Franklin Fort, Washington, D. C., for plaintiff. Kominers & Fort, Washington, D. C., were on the briefs.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

MADDEN, Judge.

The plaintiff sues to recover amounts which it paid to the United States Maritime Commission (hereinafter referred to as Maritime) in connection with its purchase of certain vessels from Maritime.

During and just after World War II, the plaintiff purchased a number of vessels from Maritime. Among the vessels purchased were seven C3–S–A5's, six C1–B's and one C3–S–A2. After the passage of the Merchant Ship Sales Act of 1946, 60 Stat. 41, as amended, 50 U.S.C.A.Appendix, §§ 1735–1746, the plaintiff made

application to Maritime for adjustment, pursuant to that Act, of the prices which it had paid for the vessels. The Act was designed to fix selling prices for the Government's surplus ships and, under section 9 of the Act, United States citizens who had purchased ships prior to the passage of the Act were given the right, upon application, to a retroactive adjustment of the prices which they had paid. 50 U.S.C.A.Appendix, § 1742. This case involves the plaintiff's contentions that Maritime improperly included certain amounts in the adjusted sales prices of the plaintiff's vessels.

The price adjustment provided by section 9 of the Act included, among other credits and charges, a credit to a purchaser for amounts by which the price the purchaser had paid for any vessel exceeded the "statutory sales price" thereof. 50 U.S.C.A.Appendix, § 1742(b). Section 3(d) of the Act, 50 U.S.C.A.Appendix, § 1736(d), defined the "statutory sales price." One factor to be taken into account in the computation of statutory sales price was the presence or absence in the vessel sold of desirable features which are (or are not) incorporated in the standard vessel used for the purpose of determining the major factor in statutory sales price, when the statutory sales price (unadjusted) would be lower (or higher) if the standard vessel had also lacked (or contained) such features. 50 U.S.C.A.Appendix, § 1736(d) (2) and (3). Section 3(d) also provided a floor for the statutory sales price. If the statutory sales price as otherwise calculated under section 3(d) was less than the floor price, the purchaser was nevertheless required to pay the floor price.

A question arose as to whether charges for desirable features were to be added to the statutory sales price, or to the floor price. This was important because where the statutory sales price was less than the floor price, the total of the statutory sales price and the desirable features charges might still be less than the floor price, so that only the floor price could be charged, unless the desirable features charges could be added to the floor price. In oth-er words, in some cases, the purchaser would pay no more for a vessel with desirable features than for one without them, unless the desirable features charges could be added to the floor price. This court held, in A. H. Bull Steamship Co. v. United States, 108 F.Supp. 95, 123 Ct.Cl. 520, that the desirable features charges were to be added to the statutory sales price, not to the floor price. See also New York & Cuba Mail Steamship Co. v. United States, Ct.Cl., 172 F.Supp. 684, decided May 6, 1959.

■ In the instant case with respect to the six C1–B's, the Government concedes that Maritime improperly added charges for desirable features to the floor price of the vessels. The Government argues, however, that the plaintiff accepted a settlement adjustment and release of its claims with respect to these six vessels, by virtue of the agreement between the plaintiff and Maritime pursuant to section 9 of the Ship Sales Act. That agreement, in the form of a notice from Maritime to the plaintiff, countersigned by the plaintiff's duly authorized officers, provided:

"On October 16, 1951, the Maritime Administrator approved your application for an adjustment, under section 9 of the Merchant Ship Sales Act of 1946, in the price(s) of the vessel(s) named above. * * * If the adjustment as so approved is acceptable to you in full and complete settlement of all claims by you or on your behalf in respect of the purchase price(s) of the above vessel(s) and if you are prepared to submit with the return of this letter your certified check in payment of the amount of the excess charter hire after March 8, 1946, please countersign and return * * *."

This court has held that the Merchant Ship Sales Act of 1946 established terms which were to be adhered to, and that it "did not leave any room for individual bargaining for terms contrary to the statute, nor much room for the application of such doctrines as estoppel and acquiescence." Nautilus Shipping Cor-

poration v. United States, 158 F.Supp. 353, 355, 141 Ct.Cl. 391, 394–395. See also Southeastern Oil Florida, Inc. v. United States, 119 F.Supp. 731, 127 Ct. Cl. 409, certiorari denied, 348 U.S. 834, 75 S.Ct. 56, 99 L.Ed. 658; A. H. Bull Steamship Co. v. United States, supra, 123 Ct.Cl. at page 528, 108 F.Supp. at page 99. We see no reason for departing from these previous holdings.

██ With respect to the seven C3–S–A5's, the question before us is whether certain charges, totaling $33,400 per vessel, paid by the plaintiff were paid for features which are "desirable features" within the meaning of section 3(d) of the Ship Sales Act, or, as the defendant argues, for features which were such an integral part of the kind of vessel which was sold as to be includible in the floor price of the vessels. The vessels involved were, toward the close of World War II, being constructed for Maritime in Pascagoula, Mississippi by the Ingalls Shipbuilding Corporation. The contract for their construction called for standard C3–S–A2 type vessels. During the negotiations for its purchase of the vessels, the plaintiff requested that certain features be added to the vessels. These features included additional cargo-handling facilities (16 10-ton booms in lieu of 5-ton booms and one additional 30-ton boom), dehumidified holds, cargo refrigeration, deep tanks for the carriage of oil (with steam-heating coils for cargo oil and battens for dry cargo), and special interior decoration in the passenger quarters. The principal items were the dehumidified holds and cargo refrigeration. The cost of these items was included in the published prices of the vessels, and the plaintiff does not question their inclusion in the floor price. They were included because it was determined that those items were incorporated in the standard vessel of the type involved. The items in question here include the heavier booms and the special interior decoration. It would appear that such items are what the Congress intended to cover when it

provided for "desirable features * * * not incorporated in the standard vessel used for the purpose of determining prewar domestic cost." [1] 50 U.S.C.A.Appendix, § 1736(d)(3).

The defendant argues that these features were costly to the Government and valuable to the plaintiff, and if the charges for them cannot be added to the floor price, the Government will not be paid for them. We have answered this argument in the Bull case, 123 Ct.Cl. at pages 527–528, 108 F.Supp. at page 99, noting that what the Government says is in a sense true, but that this is a result of the fixing by statute of an arbitrary floor price. When desirable features are lacking, and a vessel is therefore worth less than the standard vessel of its type, the Government still gets the floor price.

The defendant says that because of the features in question the vessels were "a subtype peculiar to themselves," "unique ships, the like of which only the seven built for plaintiff and involved in this litigation were ever built," so that they could not possibly have any "desirable features" in comparison with a standard vessel, since they were, in a sense, standards unto themselves. This argument, we think, proves too much. For it would prove that no vessel could have desirable features, since the presence of any features would make it a different "subtype" from other vessels. We see nothing peculiar to the features here involved which would cause their presence to convert a vessel into another type of vessel rather than into a more desirable vessel of its general type. We note that the desirable features present in the Bull case were certain heavier-than-usual booms. This is one of the features involved in this case. The other features, principally passenger quarter improvements, are as appropriately described by the language "desirable features."

It is agreed that the determination of the components entering into pricing of vessels, the method of computing basic

---

1. Prewar domestic cost is the primary factor used in determining statutory sales price.

vessel price and desirable features charges, and the costs to be considered lies primarily within the province of Maritime. See Esso Nederland N.V. v. United States, 151 F.Supp. 285, at page 287, 138 Ct.Cl. 451, at page 456. We think, however, that Maritime's actions show that it dealt with the features here at issue as desirable features. The defendant asserts that the floor price of the vessels as published by Maritime in fact included the charges for the features here at issue. The vessel prices were published in General Order 60, Supplement 16, dated October 31, 1947, as follows (with our emphasis):

### PRICES FOR STANDARD MARITIME COMMISSION VESSELS IN ACCORDANCE WITH THE MERCHANT SHIP SALES ACT OF 1946

| Type vessel | Estimated prewar domestic cost | Domestic war cost | Unadjusted statutory sale price | Floor price |
|---|---|---|---|---|
| Special C3** | | | | |
| C3-S-A4 } | | | | |
| C3-S-A5 } ------------ | $3,110,000 | $4,589,957 | *$1,555,000 | *$1,606,484 |

\* The publication of these prices is for the purpose of adjustment of prior sale of the vessels under Section 9 of the Merchant Ship Sales Act of 1946 and *said prices are subject to adjustment upward for minor betterments applicable to the individual vessels.* The statutory sales price is inapplicable since under the provisions of said Act no dry-cargo vessel, except a Liberty type vessel may be sold at less than 35% of the domestic war cost.

\*\* For adjustment for prior sales; not available for disposal.

———◆———

Although the figure of $1,606,484 (which was calculated on a value which did not include the cost of these features) is listed as the floor price, the defendant argues that the floor price quoted is not $1,606,-484 but rather "$1,606,484 *with an asterisk*," i. e., $1,606,484 plus an amount based upon an addition for these features, or a total of $1,639,884.

We note, however, that the same asterisk is placed next to the figure representing unadjusted statutory sales price. The inclusion of the asterisk next to the floor price figure seems to us to reflect the view, then held by Maritime (and which view was what led to the litigation in Bull), that the value of desirable features could be included in the floor price. Under that view it would have been natural for Maritime to note that the floor price was subject to adjustment for

desirable features. Not to have so noted would have been inconsistent with Maritime's position that desirable features charges were to be added to the floor price. The fact that the italicized language in the above-quoted price publication refers to "minor betterments" rather than "desirable features" *in haec verba* does not signify that these features were something other than what section 3(d) intended to cover. The words "minor betterments" are quite apt to describe desirable features of the type covered by the Act.[2] The C3-S-A5 had been created by changing and adding to a type which had been called C3-S-A2, the type of vessel which was under construction at the time Maritime approached the plaintiff with reference to the sale of the ships. At that time, there were six other C3-S-A2's under construction on the Pacific

2. We note that the memorandum, dated October 9, 1947, of the Chief of Maritime's Technical Bureau, which described the method used to determine the type by which the plaintiff's ships would be classified, refers to the features in question as "desirable features," and also as "additional features," "additional desirable features", "betterments" and "minor betterments."

Coast. Maritime was negotiating with American President Lines, Ltd. (plaintiff in Ct.Cl. No. 63–56, decided today) for the sale of those six vessels. When both the plaintiff and American President Lines requested substantial improvements in the C3–S–A2's, Maritime decided to average the costs of the 13 vessels (actual construction costs were much higher on the Pacific Coast) and attribute the average cost to a "Special C3" combination type vessel, which would include the 13 vessels.[3] American President Lines' Special C3's were called C3–S–A4's, and the plaintiff's were called C3–S–A5's. The major improvements added to the C3–S–A2's were common to both groups of ships. The prices of the combination type Special C3 included the cost of the major improvements in both these groups of ships. It was these prices which were published in the October 31, 1947, General Order by Maritime. The prices thus published contained the asterisks which we have discussed above. The defendant also asserts that the October 9, 1947, memorandum in which the Chief of Maritime's Technical Bureau discussed the creation and pricing of the combination type vessel indicates that the floor price for the C3–S–A5's was to be $1,639,884 per vessel.[4] That memorandum, however, describes the $1,639,-884 as including $1,606,484 as the floor price of the "combination" C3–S–A5 *plus* $33,400 as the floor price of "betterments." The betterments are described as "the differences between the combination type and the ships as built." This description of the betterments is an apt description of desirable features as defined by section 3(d), that is, they are desirable features which the standard type did not contain. Thus, we think that the memorandum shows that Mari-

time had established a floor price for the type of vessel involved, i. e., the combination type, and had determined charges for desirable features which were not contained in the standard vessel of the combination type. It is not important that the standard ship was only a hypothetical ship, and that no such standard vessel actually existed; the memorandum shows the establishment of a standard for the purpose of determining a floor price. The fact that the desirable features charges were added to the floor price is merely another reflection of Maritime's view that desirable features charges should be added to the floor price.

We also think that the language of the April 6, 1949, Agreement, pursuant to the Ship Sales Act, between the plaintiff and Maritime, is important. Article II (b) of that agreement describes the figure of $1,639,884 which the agreement contains and which is labeled "adjusted statutory sales price" (and which includes the amount claimed by the plaintiff here) as

"35 per centum of the amount determined by the Commission to be the domestic war cost of the Standard C3–S–A5 vessel,"

which is the definition of the floor price established by section 3(d), *plus*

"35 per centum of the amount estimated by the Commission, *pursuant to subparagraph 3 of Section 3(d) of the Act,* to be the domestic war cost of desirable features contained in the Vessels which are not incorporated in the Standard C3–S–A5 vessels." [Emphasis supplied.]

The reference to subparagraph (3) of section 3(d) of the Act indicates that

3. As the October 9, 1947 memorandum states, "The combining of the American President Lines' vessels and Moore-McCormack's vessels and pricing them as a separate type is regarded as a more equitable approach to the pricing problem than pricing the two groups each as separate types."

4. The plaintiff's claim is that the $1,639,-884 included desirable features charges of $33,400, which is the difference between $1,639,884 and $1,606,484, which the plaintiff claims was the floor price.

the words "desirable features" were not used merely in a colloquial sense, but that they were used in their technical, statutory sense. This provision of the agreement between the parties demonstrates that their understanding was that they had added desirable features charges to floor price. The provision also indicates that the parties recognized that the $1,639,884 price included section 3(d) desirable features charges. Defendant points out that the agreement refers to desirable features "which are not included in the Standard C3–S–A5 vessels," and argues that plaintiff's vessels, as "the only standard C3–S–A5's ever to have been built," are "unique and standards unto themselves alone," so that they cannot have features which are not included in the standard C3–S–A5. Defendant's interpretation thus makes the language of the agreement meaningless. In view of the history of the creation of the "type" for the plaintiff's vessels, we think that the "Standard C3–S–A5" vessel mentioned in the April 6, 1949, Agreement referred to the basic combination type in which the plaintiff's and American President Lines' vessels had been classified. This type included the principal changes from the original C3–S–A2, and its price included the cost of those changes. Only those minor features which were not common to all 13 new Special C3's were left, and they were treated as desirable features, within the meaning of the statute. We hold that the plaintiff is entitled to recover the amounts which it was charged for the features here in issue.

■ As a result of the inclusion of improper amounts in the adjusted sales price of its ships, smaller amounts than would have been proper were applied against the plaintiff's mortgage indebtedness on some of its ships. As a result, the plaintiff paid certain additional interest on its mortgages, and it claims a refund thereof. Such a refund was allowed in New York & Cuba Mail, supra, 172 F.Supp. at page 688, and the defendant does not contest its allowance here.

Finally, the plaintiff seeks to recover certain amounts which it asserts Maritime improperly included in the determination of the floor price of one C3–S–A2 which had been purchased by the plaintiff in 1943, and the price of which was readjusted under section 9. On August 15, 1949, Maritime's Bureau of Engineering reported to Maritime that the floor price which had been determined for the C3–S–A2 improperly included certain desirable features and national defense features charges in the construction costs of the vessel. Maritime did not revise the floor price.

The defendant argues that Maritime's determination of price should not be reviewed by this court, citing Westfal-Larsen & Co. v. United States, 161 F. Supp. 614, 142 Ct.Cl. 306.

In Westfal-Larsen the purchaser was a foreigner, and the statute setting the prices at which ships might be sold, and the methods of determining those prices, was not applicable to its purchase. Its contract with Maritime provided for the sale of three ships at stated prices and provided that if the purchased ships lacked or contained desirable features as defined in the statute, the prices should be decreased or increased, as the case might be, within the limits of the floor prices of the vessel. Maritime had fixed the sales prices of the ships and the purchase agreement was based on those prices. Maritime increased the prices, asserting that the ships contained desirable features within the meaning of the statute, and collected the increase by setting it off against other money which the Government owed the plaintiff on another account. The plaintiff sued, claiming that the alleged desirable features were in fact standard features on the type of ships sold to it.

■ The Government urged that Maritime's determination that the features were not standard was conclusive, but, that if the plaintiff could question that determination, and if the plaintiff was right in its claim that the features in

question were standard, it still could not recover because Maritime would then have the right to increase the floor price to include the cost of those features. We did not accept the Government's position. The transaction was not governed by the statute. It was contractual, the statute being involved only by reference. The Government was in the position of having made a mistake in the fixing of the price at which it was willing to sell the ships. The purchaser, unaware of the mistake, agreed to buy at the seller's price. The court held that the seller could not have the contract reformed to remedy its unilateral mistake. As to the desirable features, the parties mutually agreed that their status should be determined by the statutory standards, and the court held that the purchaser had a right that it should be so determined. See Esso Nederland, N.V. v. United States, 151 F. Supp. 285, 138 Ct.Cl. 451, 456.

In the instant case, as we have seen, Maritime's own staff advised it that what had been found to be the floor price improperly included the cost of items which were in fact desirable features and national defense features and should have been treated as such in the computation of the price of this C3–S–A2 ship. The Government does not deny that the staff report was correct. The plaintiff had the right to have the price computed in compliance with the statute and may recover on this item.

Plaintiff's motion for a summary judgment is granted, and in view of this disposition we find no need to treat with plaintiff's motion to strike certain defenses.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C. A.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and DURFEE and LARAMORE, Judges, concur.