GULF OIL CORPORATION

v.

UNITED STATES.

No. 58-57.

United States Court of Claims.

July 16, 1958.

J. Franklin Fort, Washington, D. C., for plaintiff. Kominers & Fort and Israel Convisser, Washington, D. C., were on the brief.

Justin S. Colin, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant.

MADDEN, Judge.

Each party has moved for summary judgment upon the ground that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law.

The suit is for the refund of some of the money paid by the plaintiff to the Government when the plaintiff bought an oil tanker from the United States Maritime Commission in 1947, under the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A. Appendix § 1735ff. The case again presents the problem of the cost of "slotting and strapping" Liberty ships, which problem was first considered by this court in Southeastern Oil Florida, Inc., v. United States, 115 F.Supp. 198, 127 Ct.Cl. 409, certiorari denied 348 U.S. 834, 75 S.Ct. 56, 99 L.Ed. 658.

When the plaintiff bought the tanker, the Commission was required to put it "in class," and slotting and strapping of these Liberty ships was a class require-ment. The plaintiff had arranged with a shipyard to have the ship slotted and strapped before it was delivered, and paid $38,605 to the shipyard for the work. The plaintiff requested the Commission to grant it an allowance of that amount against the price it had agreed to pay for the ship. This request was denied, on the ground that the slotting and strapping was a "desirable feature" for which the purchaser should pay, under the Ship Sales Act. Thus the cost of putting the ship in class, which the Commission was required to do or pay for under the Act, was balanced, as regards slotting and strapping, by the determination by the Commission that the slotting and strapping constituted a desirable feature which the purchaser should pay for.

According to our decision in Southeastern Oil Florida, supra, the Commission was wrong in refusing to credit the cost of slotting and strapping against the purchase price of the ship, and the plaintiff could have sued the Government then, in 1947, for this charge which had been wrongfully imposed upon it.

Other buyers of tankers were, apparently in 1951 or thereabout, held not to be chargeable with the entire cost of slotting and strapping, but only with a depreciated value of that work, amounting to $16,600. They were refunded the excess of what they had been charged over $16,600. In 1953 the plaintiff requested that it be paid the $22,005 by which its payment for slotting and strapping, $38,605, exceeded $16,600. The Government refunded the $22,005 to the plaintiff in 1953, and it was accepted by the plaintiff "without prejudice to the rights of (the plaintiff) to the balance of $16,600." The instant suit is for that balance.

The Government has pleaded the statute of limitations. 28 U.S.C. § 2501. As we have said, the plaintiff was required to pay the $16,600 here in question, together with $22,005 more, a total of $38,605, in 1947, when it should not have been required to pay anything for the slotting and strapping. It could at that time have recovered the entire $38,605 by suit in this court. In 1953 the Govern-

ment voluntarily refunded $22,005 of the $38,605 to the plaintiff. In connection with the refund of the $22,005 the Government did not in any way acknowledge any obligation to repay to the plaintiff the balance of $16,600. The instant suit was filed on February 1, 1957, some 10 years after the accrual in 1947 of the plaintiff's right to recover the slotting and strapping exaction made from it in that year. In our decision in Jackson v. United States, 158 F.Supp. 357, we held, in a comparable situation, that the suit was barred by the statute of limitations.

The plaintiff urges that the Jackson decision is distinguishable because of the way in which the Government's computation leading to the refund of $22,005 to the plaintiff in 1953 was made. The accounting credited the plaintiff with the full amount of the slotting and strapping charge, $38,605, and then charged the plaintiff with the $16,600, the revised desirable feature charge, and paid the plaintiff the difference of $22,005. The plaintiff says that this accounting shows that the Government acknowledged, in 1953, that it owed the plaintiff $38,605, and that, in that year, it made an unlawful setoff against this debt by charging the plaintiff $16,600 for a "desirable feature" for which it was not entitled to charge anything.

If the Government had in 1953 for the first time sought to make an offset for desirable features against some indebtedness which it owed to the plaintiff, there would be merit in the plaintiff's argument. But the 1953 offset in the instant case was only a reassertion by the Government of its claimed right to continue to keep $16,600 which it had exacted from the plaintiff in 1947. It had, of course, in 1947 exacted more than $16,600 but had, in the meantime, decided that it was not entitled to keep all, but only $16,600 of what it had exacted.

The essential fact is that the plaintiff could have, at any time after 1947, sued for the money for which it sued in 1957. The fact that, until the 1953 refund was made, the plaintiff could have sued for more is not significant.

The plaintiff's motion for summary judgment is denied. The defendant's similar motion is granted and the plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.