**CENTRAL GULF STEAMSHIP CORPORATION**

v.

**UNITED STATES.**

**No. 400–57.**

United States Court of Claims.

May 6, 1959.

J. Franklin Fort, Washington, D. C., for plaintiff. Kominers & Fort, Israel Convisser and Robert S. Tancer, Washington, D. C., were on the briefs.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

On January 15, 1951, the plaintiff purchased from the United States the SS. Cooper Union Victory, a dry cargo ship of the Victory type, pursuant to the provision of the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, §§ 1735–1746. The Maritime Administration, an agency in the Department of Commerce, acted for the United States in the transaction.

The "floor price" of the ship, under the provisions of the 1946 Act, was $859,157. The Maritime Administration at that time thought that if a ship contained "desirable features" beyond the ordinary attributes and equipment of ships of its type, the purchaser should pay, in addition to the floor price, the value of those additional features. The Maritime Administration in the instant case had not yet determined, when it sold the ship to the plaintiff, whether the ship actually contained such additional features, nor, on the other hand, whether the ship was deficient in normal features, which, if true, would have entitled the purchaser to a reduction in price, or an offset against desirable features, if any.

The Maritime Administration, as was its practice, required the plaintiff to pay to it, in addition to what would otherwise be the sale price of the ship, $10,000 in regard to the subject of desirable features. The plaintiff's letter transmitting the $10,000 contained certain language dictated by the Maritime Administration.[1] In substance the letter said that if it should be determined that there were desirable features, so much of the $10,000 would be retained as was necessary to pay for them; if it should be determined that there were no desirable features, the money would be refunded to the plaintiff; if it should be determined that the ship was deficient in normal features, the value of the lacking features would be set off against the

value of the desirable features, if any, and money would be refunded to the plaintiff, or additional money collected from it, as the event required.

On December 11, 1951, the Maritime Administration refunded $6,850 of the $10,000 to the plaintiff, advising the plaintiff that it had determined that the ship contained desirable features worth $3,150, and had retained that amount to pay for them.

As the 1946 Act was interpreted by this court in 1952 in the case of A. H. Bull Steamship Co. v. United States, 108 F.Supp. 95, 123 Ct.Cl. 520, the Maritime Administration had no right, in circumstances such as those here involved, to require the plaintiff to pay for desirable features. As we have seen, the plaintiff paid the $10,000 on January 15, 1951. The Maritime Administration, on December 11, 1951, refunded the $6,850 and notified the plaintiff that it would keep the balance of $3,150. This suit is for the $3,150. It was filed on August 20, 1957.

The Government pleads the statute of limitations. If the plaintiff's cause of action accrued on January 15, 1951, when it paid the $10,000, the statute of limitations has run. If it did not accrue until December 11, 1951, when the Maritime Administration refunded a part of the $10,000 and expressed its intention to keep the rest, the plaintiff's suit was filed in time. We conclude that it was filed in time.

When the $10,000 was deposited no determination had been made that the ship did in fact have desirable features and, so, the Maritime Administration did not then assert a right to the money, except as an escrow agent. It required its payment, not because it claimed plaintiff owed it, but as an assurance that it would be paid in case it was found the ship did have desirable features. Until that determination was made, the Maritime Ad-

---

1. That letter is quoted in finding 6 of Trial Commissioner George H. Foster's Report, which was filed on September 29, 1958. On November 19, 1958, the plaintiff by leave of court filed its motion for summary judgment, and the Government filed its cross-motion for summary judgment on February 9, 1959. Both parties relied upon the Trial Commissioner's Report in support of their motions.

ministration had not asserted a right to the money. Plaintiff was not deprived of its right to the money until the Maritime Administration determined the vessel did have desirable features. Until then it was still its money, although in the hands of another.

Its deposit of it was in lieu of a bond to pay the value of the desirable features, if and when the Administration determined the ship had desirable features. It was exacted as a guarantee that payment would be made if such a determination should be made. Until that determination, the Administration had asserted no adverse right to the money. When it did so, plaintiff's cause of action accrued.

At the time plaintiff deposited its money, it was perhaps ignorant of the lack of authority in the Administration to demand payment for desirable features, under the circumstances of this case, or, it may have had doubts of its authority, but to avoid a lawsuit, if possible, it decided to deposit the money anyway, in the hope that no desirable features would be found, and to await that determination before contesting the matter. The law looks with favor on honorable means to avoid lawsuits, and parties ought not to be penalized if they attempt to do so. Plaintiff was justified in refraining from having recourse to the courts until the Administration asserted an unequivocal right to the amount it found due for desirable features. Until that determination was made, the statute did not begin to run.

Indeed, having once made the deposit, plaintiff was in no position to sue for its return, in advance of the determination the deposit was made to secure. This ship would not have been delivered had not the deposit been made. Having gotten the ship on the faith of the deposit, plaintiff could not sue to recover it, so long as the reason for the deposit continued.

This holding, that the statute does not begin to run until there was an unequivocal demand for payment for desirable features, is in harmony with the holding in Jackson v. United States, 158 F.Supp. 357, 141 Ct.Cl. 385; Nautilus Shipping Corporation v. United States, 158 F.Supp. 353, 141 Ct.Cl. 391; and Gulf Oil Corporation v. United States, Ct.Cl., 163 F. Supp. 374. In all of those cases there was a determination that there were desirable features and an unequivocal demand for the payment of a definite sum for them. We said the statute began to run at that time. We reaffirm that holding.

The plaintiff's motion for summary judgment is granted, and the Government's similar motion is denied. Judgment will be entered in plaintiff's favor for $3,150.00.

It is so ordered.

JONES, Chief Judge, and BRYAN, District Judge, sitting by designation, concur.

MADDEN, Judge, with whom LARAMORE, Judge, joins, dissenting.

The United States, on January 15, 1951, exacted from the plaintiff $10,000, which, under the Ship Sales Act of 1946, the United States was not entitled to exact. Like any person who illegally exacts money from another, the United States was subjected by the law to an obligation to give the money back. That duty was immediate and unconditional. The victim of the exaction had the corresponding legal right to enforce that duty in a court. In fact, the instant suit in this court is the suit of that victim to enforce that duty. But the suit was brought more than six years after the duty arose and the corresponding right to sue accrued. It would seem that a consultation of the calendar would suffice to solve the question.

No one claims that the $6,850 voluntarily returned by the Government was a partial payment which was an acknowledgment of the debt and therefore tolled the statute. The $6,850 payment was accompanied by a statement of intention that the other $3,150 would not be repaid.

So the $3,150 has been owed, and the right to sue for it has existed, since January 15, 1951.

The Government has no more right than an individual to require a person to place money "in escrow" with it to secure the payment of a debt which he does not owe. If the plaintiff by paying the $10,000 which it did not owe, got the ship, to which it was entitled without paying the money, but thereby somehow estopped itself from getting the $10,000 back, one wonders why it isn't still estopped, since it still has the ship. Yet the court gives the plaintiff a judgment for the $3,150, the part of the $10,000 not voluntarily returned by the Government. It is all very confusing. I suggest again that the confusion could be avoided by consulting the calendar.