NAUTILUS SHIPPING CORPORATION
v.
UNITED STATES.
Nos. 143-53, 112-55, 279-56.

United States Court of Claims.
Jan. 15, 1958.
As Amended Feb. 12, 1958.

Arthur M. Becker, Washington, D. C., for plaintiff. Gerald B. Greenwald, Michael P. Daniels and Becker & Maguire, Washington, D. C., were on the briefs.

Justin S. Colin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff purchased two type T2 tankers from the United States Maritime Commission pursuant to the Merchant Ship Sales Act of 1946, 60 Stat. 41, as amended, 62 Stat. 1199, 46 U.S.C.A. § 864a, 50 U.S.C.A.Appendix, § 1735 et seq. It sues to recover (1) the amounts which it paid the Government on account of the "slotting and strapping" of the ships, (2) amounts which it spent to repair one of the tankers, it claiming that the Government was under a duty to pay for the repairs, and (3) an amount which it was allowed as a refund of income tax but which has not been paid to it because the Government set off against the refund certain claims relating to the sales of the two ships.

The Government has counterclaimed for an amount which it says it allowed the plaintiff for the purpose of making certain repairs on one of the ships, and which the plaintiff did not spend for that purpose.

In Case No. 112–55 the plaintiff sues for $28,875, the amount which the Commission required it to deposit when it took title to the ship, the Puente Hills, to pay the cost of "slotting and strapping" which the Commission had determined to be a "desirable feature" which a purchaser should pay for as an extra. The plaintiff claims that it was contrary to the Ship Sales Act to charge extra for this work. This court so held in Southeastern Oil Florida, Inc. v. United States, 119 F.Supp. 731, 127 Ct.Cl. 409, certiorari denied 348 U.S. 834, 75 S.Ct. 56, 99 L. Ed. 658. The payment was made by the plaintiff on May 28, 1948, and the petition in this case was not filed until March 21, 1955. The Government says that the suit so far as it includes the amount which the Commission ultimately charged the plaintiff for slotting and strapping is barred by the statute of limitations. We have so held on almost identical facts in the case of Jackson v. United States (Southern Trading Company v. United States), 158 F.Supp. 357, in which the question here involved is discussed at length. It should be noted that the Commission subsequently determined that the slotting and strapping charge should have been only $16,600 per ship, and that the plaintiff was entitled to a refund of $12,275 on that account. That sum was not refunded to the plaintiff, however, because the Commission set it off against claims which it asserted against the plaintiff, and which will be discussed hereinafter.

In Case No. 143–53, which concerns the tanker Potrero Hills, the plaintiff sues to recover what it was charged for slotting and strapping, and also for an additional amount which it says it was obliged to pay out to have the vessel put in class, the Commission having allowed the plaintiff only an inadequate amount for that purpose. The question of the statute of limitations is not involved in this case. The Government, however, says that the plaintiff agreed to pay the charges for slotting and strapping, and agreed to the amount which the Commission allowed it as the cost of putting the vessel in class. It says that the plaintiff is barred by acquiescence and estoppel from asserting these claims.

The Merchant Ship Sales Act of 1946, supra, was an attempt on the part of Congress to provide for the sale of the Government's large accumulation of surplus ships at prices which could be calculated on the basis of a statutory formula. It was intended to relieve the Maritime Commission of the responsibility of haggling over prices, and of the criticism, embarrassment and possible scandal which might result if sales were individually negotiated. If that policy was to be carried out, the terms of the statute had to be adhered to, even though litigation might be necessary to determine the proper construction of a rather complex statute. That did not leave any

room for individual bargaining for terms contrary to the statute, nor much room for the application of such doctrines as estoppel and acquiescence. We have so held in prior decisions. See A. H. Bull Steamship Co. v. United States, 123 Ct. Cl. 520; Southeastern Oil Florida, Inc. v. United States, supra. We have regarded the formula set by the statute as comparable to a tariff setting public utility rates. One does not irrevocably subject himself to an improper charge by estoppel or acquiescence or mistake or ignorance of law or failure to protest. As to the question of slotting and strapping, Southeastern Oil Florida is directly in point. The plaintiff should not have been charged for slotting and strapping and is entitled to recover, or to have credit for the $16,600 which it was charged on that account on the Potrero Hills purchase.

■ As to the asserted extra cost to the plaintiff of putting the tanker Potrero Hills in class, the facts are these. The Commission discontinued its earlier practice of itself putting ships in class before they were sold, and began, instead, to make allowances to the purchasers for that purpose.[1] Ordinarily, the Commission determined the amount of the allowance by taking competitive bids from shipyards. In the case of the Potrero Hills, the Commission had, before its sale to the plaintiff, intended to itself operate the ship, and had made a contract with the Bethlehem Shipyard for its repair. When the plaintiff signed its contract of purchase, the ship was already in drydock with its hull and machinery opened up and some repair work already done. With this unusual opportunity to determine what repairs were necessary, the plaintiff and the Commission agreed that the allowance to the plaintiff for the putting of the ship in class should be $124,458. While the ship was in the repair yard, the plaintiff had other work done upon it, which work was not included in the work agreed upon as necessary to put the ship in class.

The plaintiff took title to and possession of the ship and operated it. Almost two years later the plaintiff claimed that the allowance of $124,458 had not covered all necessary class allowances. By that time it would have been difficult to determine whether the additional work which the plaintiff was claiming for had really been necessary, at the time of the sale, in order to meet the minimum standards for inspection for classification. We think the Ship Sales Act, which expressly authorized the Commission to make class allowances, also authorized it to agree in advance with a purchaser upon a reasonable sum to cover the class work. It may well be that if defects had developed early the Commission would have compensated the purchaser for their repair. But a warranty indefinite in time and scope would have made the sales procedure unworkable. The plaintiff may not recover on this part of its claim.

### The Counterclaims.

■ At the time of the transfer of the Potrero Hills to the plaintiff, the plaintiff agreed in writing that, as to the $124,458 allowance made to it, it would furnish promptly to the Commission evidence of the actual cost of the repairs for which the allowance was made and that if the repairs cost less than the amount of the allowance, the plaintiff would refund the difference to the Commission. A similar agreement was made with regard to the Puente Hills, except that the allowance as to it related only to the removal of defense features, no allowance for class work being necessary.

Although the sales were made early in 1948 the plaintiff, though several times requested, did not submit evidence of its expenditures until January 1950. It then presented invoices for $236,637 for work which it claimed was necessary to put the Potrero Hills in class. A comparison of these invoices with the list of items of class work which had been agreed on showed that the plaintiff had, as to those

[1]. See A. H. Bull Steamship Co. v. United States, supra, 123 Ct.Cl. at pages 524–525.

items, not spent at all the $10,634 which had been allowed it for defense removals and restorations, and had spent $7,924 less than the amount allowed it to repair certain collision damage. The Commission billed the plaintiff for $18,634 and when this was not paid, it offset that much of the plaintiff's slotting and strapping refund on the two ships to pay it.

As to the Puente Hills, the parties agreed that the plaintiff had spent $18,-637 less than the amount allowed it for defense removal, and the plaintiff was billed for that sum, and has not paid it, except as a part of it may have been covered by offset of the slotting and strapping refunds.

The plaintiff says, in effect, that its agreements to refund the unspent portions of these allowances were illegal and unenforceable, that if it preferred to leave the ships encumbered by the defense gear and keep the money or spend it for other purposes, that was its affair. Perhaps that would have been its affair, if it had not agreed to the contrary. We see nothing in the statute which invalidates such agreements. The Commission and the country would not cease to have any interest in the ships after they were sold to private owners. They would still be a part of the country's merchant marine, and if an inadequate job of repairing was done, or if the ships were still left cluttered up with defense gear, they would not be the ships which the Commission sought, by the granting of the allowances, to put into the merchant marine. In any event the plaintiff agreed to make the refund, and the statute did not prevent the agreement.

In Case No. 143–53 the plaintiff is entitled to recover $16,600 on account of slotting and strapping. In Case No. 279–56 the plaintiff is entitled to recover $2,908.40 plus interest thereon as a tax refund. In Case No. 112–55 the plaintiff is not entitled to recover the $16,600 charged for slotting and strapping the Puente Hills.

■ In considering the Government's counterclaims, a problem has occurred to us which the parties have not raised expressly in their pleadings nor discussed in their briefs. As we have said, the plaintiff's suit No. 112–55 to recover the $16,600 which the Government charged it for slotting and strapping the Puente Hills was filed too late. But the Government, in its counterclaim, is suing for $18,637 for money that the plaintiff agreed to refund if it did not spend it for removal of the defense features on that ship. We think the plaintiff, under its prayer for "such other and further relief as to the Court may seem just and proper" and following the principles stated in Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., [2] is entitled to equitable recoupment of the $16,600. United States v. Macdaniel, 7 Pet. 1, 32 U.S. 1, 8 L.Ed. 587; United States v. Ringgold, 8 Pet. 150, 32 U.S. 150, 8 L.Ed. 899; Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Stone v. United States, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265.

On its counterclaims the United States is entitled to recover $18,634 under the agreement relating to the Potrero Hills and $18,637 under the agreement relating to the Puente Hills, plus $4,229.27, the value of the unused stores, less the two items of $12,275 each which have already been offset by the Government and less the $16,600, or the part thereof which can be used for purposes of equitable recoupment, barred by the statute of limitations, which will be applied to reduce the amount of the Government's recovery on its counterclaim relating to the purchase of the Puente Hills.

The net recovery in these cases will be as follows: In Case No. 143–53 plaintiff is entitled to recover $16,600 and to be credited for the $12,275; the Government is entitled to recover $18,634 plus $4,229.27. Therefore, under that claim, the plaintiff will have a net recovery of $6,011.73.

In Case No. 279–56, plaintiff will recover $2,908.40 plus interest thereon as provided by law, and the Government's counterclaim will be dismissed.

2. See Equitable Trust Company v. United States, Ct.Cl., 155 F.Supp. 749.

In Case No. 112–55, the Government is entitled to recover $18,637, but that amount will be reduced by the $12,275 which the Government has already offset and the resulting amount will be completely wiped out by applying to it that part of the $16,600 which can be used defensively under the doctrine of equitable recoupment. Therefore, there will be no money judgment for either party in this claim, and the plaintiff's petition will be dismissed.

The plaintiff is entitled to recover on its petitions and the Government on its counterclaims in accordance with this opinion, and judgment will be entered to that effect.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.