**SPRAGUE STEAMSHIP COMPANY**

v.

**UNITED STATES.**

No. 401-57.

United States Court of Claims.
May 6, 1959.

J. Franklin Fort, Washington, D. C., for plaintiff, Kominers & Fort and Robert S. Tancer, Washington, D. C., on the briefs.

Clare E. Walker, New York City, Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff in November, 1946 purchased from the United States Maritime Commission two dry cargo ships of the C2–S–B1 type, pursuant to the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, §§ 1735–1746. A considerable discussion of that statute may be found in this court's opinion in A. H. Bull Steamship Co. v. United States, 108 F.Supp. 95, 123 Ct.Cl. 520.

In the instant case, as in the Bull case, the Maritime Commission, in computing the price which the plaintiff should pay for the ships, computed depreciation on the ships down to the "floor price" and then added to the floor price the cost of "desirable features". We held in the Bull case that this order of computation violated the statute; that the value of the desirable features should have been included in the value of the ship before the depreciation computation began. The effect of our decision was that if there was sufficient depreciation to carry

the price, including the value of the desirable features, down to the floor price, that would be the lawful sale price of the ship, and the presence of the desirable features would not add anything to the sale price.

When the plaintiff bought the ships in 1946, its contract of purchase provided that if the Commission should determine, upon an examination of the ships, that they contained desirable features, the plaintiff would pay extra for those features. In 1948 the Commission sent a bill to the plaintiff for $2,189.68, the value of certain described desirable features. The plaintiff returned the bill without payment, saying that the items described in it were standard features of such ships, and not desirable features for which an extra charge could be made. In 1949 the Commission wrote a letter persisting in its position that the items were desirable features and the plaintiff replied, repeating its contention that they were not. From August 25, 1949, the date of the plaintiff's letter, to October 12, 1951, the Commission made no effort to collect its desirable features charges from the plaintiff nor, apparently, from any purchasers of ships.

On October 12, 1951, the Maritime Administration as successor to the Commission reminded the plaintiff of the 1948 bill, and on November 1, 1951, wrote a letter insisting on its prompt payment. On November 14, 1951, the plaintiff paid the $2,189.68. On June 30, 1952, the plaintiff, for the first time, wrote the Maritime Administration objecting to the method of computation of the price of the ships as being contrary to the statutory formula.

The plaintiff's suit was filed within six years after its payment of the money in question, hence there is no problem of the statute of limitations. The Government's defenses are (1) that the plaintiff paid the money in question voluntarily and under mistake of law, and (2) that the plaintiff acquiesced in the charges and thereby misled the Government to its prejudice.

So far as the second defense is concerned, the Government has not shown wherein the Government has been prejudiced by the plaintiff's payment of this charge in 1951, or its delay in filing suit until more than five years after the payment. If the plaintiff is otherwise entitled to the money, the fact that the Government has had the use of it, and that a judgment for it will not include any interest, leave no room for any claim that the Government has been prejudiced.

We consider the Government's first defense, that recovery of the illegal exaction is not permissible because the payment was made voluntarily and under mistake of law. This court has had a number of cases involving the unauthorized collection by the Maritime Commission of charges for "desirable features" in sales made under the Merchant Ship Sales Act of 1946, supra. We have held that Congress, by that Act, intended that the prices of these ships should be determined, not by negotiation and haggling, with attendant suspicions of favoritism or scandal, but by arithmetic. This thought was elaborated in our opinion in Nautilus Shipping Corporation v. United States, 158 F.Supp. 353, 141 Ct.Cl. 391, and our prior decisions cited therein. We treated the statutory formula of the Ship Sales Act as comparable to a statutory schedule of public utility rates, which may not be legally departed from by design or by mistake, mutual or unilateral, whether of fact or law. In its essentials, this case presents no problem not present in those earlier cases.

The Government, seeking to distinguish the earlier cases, points out factual differences. Of the Bull case, supra, the Government says, cryptically, it "was not at all concerned with estoppel or voluntary payment." Of Southeastern Oil Florida, Inc. v. United States, 119 F. Supp. 731, 127 Ct.Cl. 409, certiorari denied 348 U.S. 834, 75 S.Ct. 56, 99 L.Ed. 658, it says that the purchaser there signed the contracts under protest. We do not understand that protest would

have any legal effect, unless that effect is created by a statute or a valid regulation. The Government says that in Nautilus, supra, though the purchasers already had possession of the ships, when they made their payments for desirable features, they did not yet have their documents of title. We have no idea that Congress would have wanted those purchasers who happened to have heard of the Bull litigation, and who therefore enclosed a protest with their payments, to get their ships cheaper than other purchasers not aware of pending litigation.

In the instant case the Government relies heavily upon the case of United States v. Edmonston, 181 U.S. 500, 21 S.Ct. 718, 45 L.Ed. 971. In that case a Government official charged a purchaser of public land more than the price fixed by statute, and put the money in the Treasury. The Court held that the purchaser could not recover the excess from the United States. The precedent is a weighty one, and in the recent case of Olympic Steamship Co. v. United States, D.C., 165 F.Supp. 627, the District Court relied upon it in denying recovery to the purchaser in a case fairly comparable to our instant case.

■■ We think it may be said of the Edmonston decision that the doctrine that there is a sharp distinction between mistake of fact and mistake of law, when a court faces the problem of the recovery of money paid under a mistake, has less vitality today than it had when the Edmonston case was decided. Whether that be so or not, it must be that a court, in the application of a statute, cannot evade the task of ascertaining as best it can, and then giving effect to, the Congressional purpose. As our former decisions have shown, we find in the Ship Sales Act a Congressional purpose that the Government's surplus ships should be sold at prices, uniform for all purchasers, and ascertainable by mathematical application of the statutory formula, properly interpreted. We do not think that Congress was willing that that purpose should be frustrated, and different prices should be charged to different purchasers, because of different degrees of knowledge, in the purchasers, of facts or law. We think that Congressional purpose was strong enough to override any general legal doctrine, applicable in other situations, but which, if applied in the instant situation, would result in different persons paying different prices, because, though the ships were the same, the states of mind of the purchasers were different.

In the Edmonston case the Supreme Court did not find a Congressional purpose that land should be sold at the prices fixed by statute sufficiently strong to overcome the general legal doctrine relating to voluntary payments made under mistake of law. If it had found such a Congressional purpose, it would, no doubt, have given effect to it.

The defendant's motion for a summary judgment is denied. The plaintiff's motion to strike defenses and for summary judgment is granted. Judgment will be entered for the plaintiff in the amount of $2,189.68.

It is so ordered.

BRYAN, District Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.