**CHRIS BERG, INC.**

v.

**The UNITED STATES.**

No. 235–68.

United States Court of Claims.

May 15, 1970.

As Amended Oct. 2, 1970.

Bruce T. Rinker, Seattle, Wash., for plaintiff. Stuart G. Oles, Seattle, Wash., attorney of record; Allen, DeGarmo & Leedy, Seattle, Wash., of counsel.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

NICHOLS, Judge.

Plaintiff corporation, a construction contractor, submitted a bid on a Government contract in an amount which reflected an error in computing its allocable costs. Defendant upon opening the bid suspected the mistake and plaintiff has established it occurred, but plaintiff refused to rescind and defendent refused to increase the bid price. Plaintiff signed the contract, N 62766–68–C–0001, as tendered, and performed it but brings this suit for the difference, as it says, between what it bid and what it would have bid, but for the mistake. The

case is before us on cross motions for summary judgment, with documentation. There is no issue of material fact and plaintiff is entitled to recover.

The United States Navy sent plaintiff its invitation to bid on the construction or restoration of various facilities in the Trust Territory of the Pacific Islands. The mistake in the cost calculations resulted from a misplaced decimal in calculating a roofing job, and the omission of one of the original estimate sheets. The amount claimed totals $41,121; made up of $25,633 for the omitted sheet, $11,046 for the misplaced decimal, "Fee" at $4,035, and all risk Bond at one percent—$407. Plaintiff bid $616,000. There were three other bids ranging from $732,800 to $1,117,000. Defendant's estimate was $707,000. After bid opening the contracting officer suspected that plaintiff had made an error and requested review and reconfirmation. Plaintiff checked its figures and discovered the errors above-mentioned, the reality of which is not in dispute. The worksheets show that the computation before the bid resulted in a figure, including markup, of $618,128, reduced to $616,000 for bidding purposes. Whether this reduction of $2,128 was a "rounding out" or a "gross reduction" is a semantic issue much debated by the parties. It was, at any rate, a reduction of approximately ⅓ of one percent in the bid price.

The dispute resulted, as stated, from the fact that plaintiff wanted to reform its bid price while defendant would consider only recision. Defendant said that "NAUFACENGCOM policy" did not permit increases in a bid amount because of mistakes in the original calculation. Plaintiff finally signed the contract in the amount bid, reserving its request for modification in an accompanying letter. Plaintiff says it did not want to create bad relations with defendant, having worked for it on various other jobs, and being subject to duress and coercion via the bid bond. There is no particular duress evident in the record. We do not deem that under the facts stated, duress is a relevant issue, and we do not consider it further.

Plaintiff performed the contract, meanwhile pursuing its administrative remedies. Apparently the instant claim is the only unsettled item under the contract. The last stop of the case before here was at the General Accounting Office. The Assistant Comptroller General held that the Navy violated the applicable Armed Services Procurement Regulation (ASPR hereinafter) set forth below in refusing to consider evidence of error when submitted for the purpose of increasing the bid price. But, he held, the evidence before him showed a "gross reduction" of $2,138, which made it difficult to determine to what extent the bidder would have relied on the correct costs to bid any specific amount higher than it did. "In view thereof the immediate claim * * * is for denial." B–163284, reported 47 Comp. Gen. 507 (1968).

The applicable regulations, ASPR 2–406, *Mistakes in Bids* and ff. are set forth as appendix A. It appears, and we assume, that the Navy correctly held this was not an *Apparent Clerical Mistake* under 2–406.2 since that covers only those mistakes that can be seen to be such without information from any source except the face of the bid itself. The illustrations make that clear.

Under 2–406.3 *Other Mistakes* there must be "clear and convincing evidence," establishing the existence of a mistake, to allow the bidder to rescind. If he wants to modify, and can show the bid actually intended, and the correction would not "displace one or more lower bids," he may be allowed to do so.

Defendant urges here that the Government has an option and can always restrict the relief to recision, not reformation, under these circumstances. It does indeed seem clear by 2–406.3(a)(2) that a mistaken bidder may not rescind even though he wants to, if the Government prefers reformation and decides it can determine what the bid would have been and that it is still the

low one. That is, we suppose, to obtain for the Government the benefit of what is after adjustment, still the best price offered. In the case of a bidder whose election is reformation, not recision, the ensuing provisions in (a) (3) offer the Government no corresponding option to rescind unless clear and convincing evidence of what the bid would have been is not forthcoming. Here too, policy seems to favor reformation over recision, no doubt for the same reason. We have the high authority of the Comptroller General, *cit. supra*, that a policy of insisting upon recision only in such a case is contrary to ASPR. Thus we do not sustain defendant's argument on this point.

Defendant does, however, agree with the Comptroller General that we are concerned with a "gross reduction," not "rounding off." It makes the startling assertion that a reduction in the bid from $618,128 to $615,000 or $610,000 would be more acceptable than $616,000 as a "rounding off."

The problem is to determine what constitutes "clear and convincing evidence" of what the bid would have been. Apparently the bidder's own self-serving statement is not necessarily for acceptance. A "gross reduction" refutes him, as the thinking seems to be, because it shows he is giving controlling weight to the possibility he may be underbid. Such a person, on correcting upward an error in his cost estimates, would be still more worried about other bidders and would tend to shave his bid even more. Thus the probable bid on corrected costs would be uncertain over a wide range of possibilities.

This reasoning cannot be carried too far. Even if the original bid is computed in the exact amount of the mistaken estimated costs plus usual markups, there remains some uncertainty whether a corrected higher bid would throw the bidder into a panic about losing the award to competitors. The Navy command, as we understand it, takes the position that this uncertainty always precludes reform. The trouble with this view is that it effectively nullifies the regulation and therefore, of necessity, must misconstrue it. One must be willing to believe the evidence is "clear and convincing" on the basis of a reasonable probability that the markup on the higher costs would be computed in the same way it was on the mistaken lower ones.

■■ It is not reasonably probable that a bidder who was primarily concerned about losing the award to competitors would meet the danger by a bid reduction of but ⅓ of one percent. One would have to be a better mathematician than this court to calculate just how much this would add to his chances, but surely the improvement would be trifling. Accordingly, we think this reduction is *de minimis* and for present purposes the same as no reduction at all. Moreover, we think an uncertainty within a relatively narrow range is not inconsistent with "clear and convincing evidence" of what the bid would have been. Plaintiff proposes that the "rounded off" figure of $616,000 be reformed by adding the "rounded off" figure of $41,000, making a reformed contract price of $657,000, and this suggestion we adopt as it puts plaintiff at the bottom of the range of uncertainty. Chernick v. United States, 372 F.2d 492, 497, 178 Ct.Cl. 498, 507 (1967). We do not necessarily adopt plaintiff's semantics as we think it legally irrelevant whether these small adjustments are known as "rounding off" or by some other name. We add the further caution that in deeming a bid reduction of ⅓ of one percent inconsequential we have taken into account that the work was to be done not at home but in the Trust Territory, where wide differences among the bids were predictable and actually occurred.

We turn now to defendant's principal argument, which builds on Massman Construction Co. v. United States, 60 F.Supp. 635, 102 Ct.Cl. 699, cert. denied 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1985 (1945). It is that there is no basis for reformation because plaintiff knew of the mistake and signed the contract anyway. In

that case, as here, the plaintiff had contracted at the bid price after defendant had refused to let it correct a mistake. It alleged bid bond coercion, as here, and reluctance to alienate a valued customer, as here, had accompanied its signature, as here, with an emphatic written protest.

The court thought that the Massman Company was not free from negligence in making the mistake it did. That is a factor of diminished importance today. In our recent decision in Ruggiero v. United States, 420 F.2d 709, 713, 190 Ct. Cl. 327 (decided January 23, 1970), slip op. at p. 7, we pointed out as a characteristic of mistaken bid cases in which relief was granted, both before and after *Massman* that just about all the bidders were "guilty of egregious blunders."

A more important and, we think, controlling distinction is that there was not any ASPR at the *Massman* date, or any other regulation called to the court's attention. There was nothing to show in any clear-cut way that defendant's officers violated any law that governed their acts in refusing to adjust the bid or rescind for the mistake. The court, as then constituted, would reform a contract when general equitable principles so dictated, even when signed with knowledge of the mistake, as appears in Rappoli v. United States, 98 Ct.Cl. 499 (1943). The facts there were like *Massman's* except that defendant's officers procured Rappoli's signature to the contract at the bid price by promising they would get it reformed later, and this they failed to do.

As we showed in *Chernick, supra,* the law respecting mistaken bids has become more lenient towards the bidder in the years that have elapsed since 1945.

■ The ASPR is law which governs the award and interpretation of contracts as fully as if it were made a part thereof. G. L. Christian & Assoc. v. United States, 312 F.2d 418, 160 Ct.Cl. 1, reh. denied, 320 F.2d 345, 160 Ct.Cl. 58, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). It is binding on defendant's officers. Newport News Shipbuilding & Dry Dock Co. v. United States, 374 F.2d 516, 179 Ct.Cl. 97 (1967).

Defendant says that this part of ASPR was not made for the benefit of bidders. Defendant cites Hartford Accident & Indemnity Co. v. United States, 127 F.Supp. 565, 566–567, 130 Ct.Cl. 490, 492–494 (1955) which makes a like holding, but with respect not to this part of ASPR but to a different regulation prescribing standard forms of construction contracts. The only other citation is to a Comptroller General's decision on a wholly distinct part of ASPR. We do not think it possible to determine that all of ASPR was or was not made for the benefit of bidders. Different parts may have different purposes. We have only just now held that provisions of ASPR providing a "weighed guidelines method" for determining a reasonable level of profit under an escalation clause could be invoked by a contractor against an administrative determination of a reasonable level contrary to its terms. Bethlehem Steel Corp. v. United States, 191 Ct.Cl. ——, 423 F.2d 300 (decided March 20, 1970). It is true defendant did not there make the argument it makes here.

■ If a regulation appears intended to define and state the rights of a class of persons, it is presumptively intended to benefit those persons. Fletcher v. United States, 392 F.2d 266, 183 Ct.Cl. 1 (1968).

■ If officials of the Government make a contract they are not authorized to make, the other party is not bound by estoppel or acquiescence or even failing to protest. Nautilus Shipping Corp. v. United States, 158 F.Supp. 353, 141 Ct.Cl. 391 (1958). In Rough Diamond Co. v. United States, 351 F.2d 636, 639–643, 173 Ct.Cl. 15, 20–27 (1965), cert. denied, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966), we analyzed the differences as to contractor's rights under contracts made in violation of law, when the law violated was or was not made for

the benefit of the contracting party. It is superfluous to repeat that discussion. Suffice it that *Rough Diamond* supports plaintiff's position here, not that of defendant which cites it, once it is decided as we have that the ASPR provisions on mistaken bids were written for the protection of bidders.

■ This analysis establishes that the award of the contract to plaintiff at the bid price, with knowledge of its mistake and over its protest, was a clear-cut violation of law. Plaintiff is entitled to reformation of the contract to provide a price of $657,000.

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is allowed. Judgment will be entered for plaintiff in an amount to be determined under Rule 131.

APPENDIX A

Pertinent Armed Services Procurement Regulations in effect at bid opening. 32 C.F.R. § 2.406 and ff. (1967):

§ 2.406    Mistakes in bids.

§ 2.406–1    General.

After the opening of bids, contracting officers shall examine all bids for mistakes. In cases of apparent mistakes, and in cases where the contracting officer has reason to believe that a mistake may have been made, he shall request from the bidder a verification of the bid, calling attention to the suspected mistake. If the bidder alleges a mistake, the matter shall be processed in the manner set forth below. Such actions shall be taken prior to award.

§ 2.406–2    Apparent clerical mistakes.

Any clerical mistake apparent on the face of a bid may be corrected by the contracting officer prior to award, if the contracting officer has first obtained from the bidder written or telegraphic verification of the bid actually intended. Examples of such apparent mistakes are: obvious error in placing decimal point; obvious discount errors (for example—1 percent 10 days, 2 percent 20 days, 5 percent 30 days); obvious reversal of the

price f. o. b. destination and the price f. o. b. factory; obvious error in designation of unit. Correction of the bid will be effected by attaching the verification to the original bid and a copy of the verification to the duplicate bid. Correction will not be made on the face of the bid; however, it shall be reflected in the award document.

§ 2.406–3    Other mistakes.

(a) The Departments are authorized to make the following administrative determinations in connection with mistakes in bids, other than apparent clerical mistakes, alleged after opening of bids and prior to award.

(1) Where the bidder requests permission to withdraw a bid and clear and convincing evidence establishes the existence of a mistake, a determination permitting the bidder to withdraw his bid may be made.

(2) However, if the evidence is clear and convincing both as to the existence of the mistake and as to the bid actually intended, and if the bid, both as uncorrected and as corrected, is the lowest received, a determination may be made to correct the bid and not permit its withdrawal.

(3) Where the bidder requests permission to correct a mistake in his bid and clear and convincing evidence establishes both the existence of a mistake and the bid actually intended, a determination permitting the bidder to correct the mistake may be made; provided that, in the event such correction would result in displacing one or more lower bids, the determination shall not be made unless the existence of the mistake and the bid actually intended are ascertainable substantially from the invitation and the bid itself. If the evidence is clear and convincing, only as to the mistake, but not as to the intended bid, a determination permitting the bidder to withdraw his bid may be made.

(4) Where the evidence is not clear and convincing that the bid as submitted was not the bid intended, a determination may be made requiring that the bid

be considered for award in the form submitted.

(b) Authority for making the determinations described in paragraph (a) (1) of this section may be delegated, without power of redelegation, to any purchasing activity having legal counsel available. Authority for making the determinations described in paragraph (a) (2), (3) and (4) of this section may be delegated, without power of redelegation as set forth below:

(1) Department of the Army: To the Director of Procurement, Office of the Assistant. Secretary of the Army (Installations and Logistics); General Counsel of the U. S. Army Materiel Command; General Counsel of the Office of the Chief of Engineers.

(2) Department of the Navy: To the Director, Contracts Division, Bureau of Yards and Docks; the Assistant Chief for Purchasing, Bureau of Supplies and Accounts.

(3) Department of the Air Force: To the Staff Judge Advocate, Headquarters, Air Force Logistics Command.

(4) Defense Supply Agency: The Counsel.

(c) Each proposed determination shall have the concurrence of legal counsel within the Department concerned prior to issuance.

(d) To support correction of an allegedly erroneous bid subsequent to opening, the records submitted by the contracting officer in accordance with Departmental procedures shall contain the best available evidence conclusively establishing not only the existence of the error, but its nature, how it occurred, and what the bidder actually intended to bid. A mere statement that the administrative officials themselves are satisfied that an error was made is insufficient.

(e) In order to assure compliance with paragraph (d) of this section, suspected or alleged mistakes in bids will be processed as follows:

(1) In the case of any suspected mistake in bid, the contracting officer will immediately contact the bidder in question calling attention to the suspected mistake, and request verification of his bid. The action taken to verify bids must be sufficient to either reasonably assure the contracting officer that the bid as confirmed is without error or elicit the anticipated allegation of a mistake by the bidder. To insure that the bidder concerned will be put on notice of a mistake suspected by the contracting officer, the bidder should be advised, as is appropriate, of (i) the fact that his bid is so much lower than the other bid or bids as to indicate a possibility of error, (ii) important or unusual characteristics of the specifications, (iii) changes in requirements from previous purchases of a similar item, or (iv) such other data proper for disclosure to the bidder as will give him notice of the suspected mistake. If the bid is verified, the contracting officer will consider the bid as originally submitted. If the time for acceptance of bids is likely to expire before a decision can be made, the contracting officer shall request all bidders whose bids may become eligible for award to extend the time for acceptance of their bids. If the bidder whose bid is believed erroneous does not grant such extension of time, the bid shall be considered as originally submitted. If a bidder alleges a mistake, the contracting officer will advise the bidder to make a written request indicating his desire to withdraw or modify the bid. The request must be supported by statements (sworn statements if possible) concerning the alleged mistake and shall include all pertinent evidence such as bidder's file copy of the bid, the original worksheets and other data used in preparing the bid, subcontractors' quotations, if any, published price lists, and any other evidence which conclusively establishes the existence of the error, the manner in which it occurred, and the bid actually intended.

(2) Where the bidder fails or refuses to furnish evidence in support of a suspected or alleged mistake, the contracting officer shall consider the bid as submitted unless the amount of the bid is so

far out of line with the amounts of other bids received or with the amount estimated by the agency or determined by the contracting officer to be reasonable, or there are other indications of error so clear, as reasonably to justify the conclusion that acceptance of the bid would be unfair to the bidder or to other bona fide bidders. The attempts made to obtain the information required and the action taken with respect to the bid shall be fully documented.

(3) Where the bidder furnishes evidence in support of an alleged mistake, the contracting officer shall refer the case to the appropriate authority, together with the following data:

(i) A signed copy of the bid involved;

(ii) A copy of the invitation for bids and any specifications or drawings relevant to the alleged mistake;

(iii) An abstract or record of the bids received;

(iv) A written request by the bidder to withdraw, or modify the bid, together with the bidder's written statement and supporting evidence (such as work sheets, or other data used in preparing the bid) of the existence of the mistake and manner in which it occurred, and supporting evidence of the bid actually intended;

(v) A written statement by the contracting officer setting forth (a) a description of the supplies or services involved, (b) the expiration date of the bid in question and of the other bids submitted, (c) specific information as to how and when the mistake was alleged, (d) a summary of the evidence submitted by the bidder, (e) in the event only one bid was received, a quotation of the most recent contract price for the supplies involved, or, in the absence of a recent contract for the item, the contracting officer's estimate of a fair price for the item, and (f) any additional evidence considered pertinent. The statement shall recommend that either the bid be considered for award in the form submitted, or the bidder be authorized to withdraw the bid, or the bidder be authorized to modify the bid.

When time is of the essence because of the expiration of bids or otherwise, the contracting officer may refer the case by telegraph or telephone to the designated authority. Ordinarily, contracting officers will not refer mistake in bid cases by telegraph or telephone to the designated authority, when the determinations set forth in paragraph (a) (2) and (3) of this section are applicable, since actual examination is generally necessary to determine whether the evidence presented is clear and convincing.

(f) Nothing contained in this section prevents a Department from submitting doubtful cases to the Comptroller General for advance decision.

(g) A signed copy of the administrative determination authorizing withdrawal or modification of the bid made in accordance with paragraph (a) of this section shall accompany the General Accounting Office copy of the contract awarded. Each Department shall maintain records of all administrative determinations made in accordance with paragraph (a) of this section, together with a complete statement of the facts involved and the action taken in each case. Copies of all administrative determinations will be included in the contract file.

§ 2.406–4   Disclosure of mistakes after award.

(a) When a mistake in a contractor's bid is not discovered until after award, the mistake may be corrected by supplemental agreement if correcting the mistake would make the contract more favorable to the Government without changing the essential requirements of the specifications.

(b) In addition to the cases contemplated in paragraph (a) of this section, the persons enumerated in paragraph (c) of this section are authorized, without power of further redelegation, to rescind or reform contracts where the evidence is clear and convincing that:

(1) A mistake in the bid was made by the contractor,

(2) The mistake was mutual or the contracting officer was, or should have been, on notice of the error prior to the award, and

(3) It is determined that the contract price should be increased or that the contract be rescinded or the item of supply or service involved in the error should be deleted, provided that:

(i) (a) In a contract to be rescinded in its entirety, the total contract amount does not exceed $1,000,

(b) In reforming a contract any resultant deletion from the contract requirement does not reduce the contract amount by more than $1,000 or any resultant increase in price does not exceed $1,000 and does not cause the corrected price to be more than the price of the next higher bid for the supplies and services concerned, and

(ii) Notice of the mistake is received by the contracting officer prior to final payment.

(c) The authority granted in paragraph (b) of this section may be exercised by the following:

(1) Department of the Army: The Head of a Procuring Activity and, when designated, his deputy or a principal assistant in the headquarters office responsible for procurement.

(2) Department of the Navy: The Head of a Procuring Activity and, when designated, his deputy or principal assistant responsible for procurement.

(3) Department of the Air Force: The Commander, Air Force Logistics Command, with power of redelegation to Directors and Chiefs of comparable offices, and their deputies, Headquarters, Air Force Logistics Command.

(4) Defense Supply Agency: the head of a procuring activity and, when designated, his deputy, principal assistant responsible for procurement, or Counsel.

(d) Mistakes disclosed after award shall be processed as follows:

(1) When a mistake in bid alleged or disclosed after award, the contracting officer shall advise the contractor to support the alleged error by written statements and by all pertinent evidence, such as the contractor's file copy of the bid, his original worksheets and other data used in preparing the bid, subcontractors' and suppliers' quotations, if any, published price lists, and any other material which will serve to establish the mistake, the manner in which it occurred, and the bid actually intended.

(2) Where the contractor furnishes evidence in support of an alleged mistake, the case shall be forwarded through channels to the appropriate authority enumerated in paragraph (c) of this section, together with the following data:

(i) All evidence furnished by the contractor in support of the alleged error.

(ii) A signed statement by the contracting officer.

(a) Describing the supplies or services involved,

(b) Specifying how and when the mistake was alleged or disclosed,

(c) Summarizing the evidence submitted by the contractor and any additional evidence considered pertinent,

(d) Quoting, in cases where only one bid was received, the most recent contract price for the supplies or services involved, or in the absence of a recent contract for the item, the contracting officer's estimate of a fair price for the item,

(e) Setting forth his opinion whether a bona fide mistake was made and whether he was, or should have been, on notice of any error in the bid prior to the award, together with the reasons for or data in support of such opinion,

(f) Setting forth his recommendation and the basis therefor, and

(g) Disclosing the status of performance and payments under the contract,

including contemplated performance and payments, if applicable.

(iii) A signed copy of the bid involved.

(iv) A copy of the invitation for bids and any specifications or drawings relevant to the alleged mistake.

(v) An abstract or written record of the bids received.

(vi) A written request by the contractor to reform or rescind the contract.

(vii) A copy of the contract and any change orders or supplemental agreements thereto.

(e) The authorities enumerated in paragraph (c) of this section, and in the Department of the Navy field contracting officers of the Bureau of Supplies and Accounts at activities having available legal counsel representing the Office of the General Counsel, are authorized, without power of redelegation, to deny relief requested by a contractor, due to an alleged mistake regardless of the amount of relief requested where it is determined the evidence is not clear and convincing:

(1) That a mistake in bid or proposal was made by the contractor or

(2) That the mistake was mutual or the contracting officer was or should have been on notice of the error prior to the award of the contract.

(f) The contracting officer shall:

(1) Cite the administrative determination on copies of the contract modification,

(2) Attach a copy of the administrative determination to the copy of the contract modification for the General Accounting Office, and

(3) Distribute such determination as may be prescribed by Departmental regulations.

(g) In all cases not covered by paragraph (a), (b), or (e) of this section, the case shall be processed in accordance with Part 17 of this chapter or, where that part is inadequate, in accordance with Departmental procedures.