Gerald L. BRUMLEY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 02–11C.

United States Court of Federal Claims.

March 6, 2003.

Steven Napper, Steven Napper, Ltd., Little Rock, Ark., for plaintiff.

Michael D. Austin, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

HODGES, Judge.

The Government paid plaintiff disability benefits to which he was not entitled. The error occurred because plaintiff misstated his outside income on forms required for benefits under the Federal Employees Compensation Act. Defendant recouped the overpayment years later, from plaintiff's benefits under the same program.

Plaintiff filed a motion for summary judgment, contending that defendant's offset against his government benefits violated the applicable ten-year statute of limitations.

Defendant filed a cross-motion for summary judgment and a motion to dismiss for lack of jurisdiction. We deny defendant's motion to dismiss and plaintiff's motion for summary judgement; defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff was a forty-one year-old Program Analyst for the Federal Aviation Administration when he filed notice of an occupational disease in July 1974. He alleged that a five-year dispute with his co-workers concerning his pay grade resulted in acute depression-anxiety. The Office of Workers' Compensation Programs accepted plaintiff's claim that he was totally disabled and began making payments in February 1975 pursuant to the Federal Employees Compensation Act. 5 U.S.C. §§ 8101–8152.

The OWCP requires an employee in such circumstances to report outside employment on Form CA–1032. Plaintiff reported "None" in the space on that form for listing such employment. He completed the same form in the same way in November 1979. A psychiatrist who examined plaintiff in 1979 reported that Mr. Brumley

> stated that he was actively involved in carpentry work and was doing the purchasing of real estate and the management of it. He seemed to be doing fairly well with this type of activity and seemed to have numerous other activities that were economically productive for him. He did not elaborate upon these.

Plaintiff completed Form CA–1032 in May 1981 and May 1982, again certifying that he had no income from employment, including self-employment.

An investigator for the Labor Department observed plaintiff performing carpentry work in his backyard in June 1982. Further investigation established that plaintiff helped manage a Baskin–Robbins Ice Cream Parlor, operated a business called B–Crest Builders, and was "frequently seen driving a truck with the word 'Aerolite' on the door." He did landscaping work, received training in auctioneering, and worked as an Amway distributor. Mr. Brumley conducted auctions on a regular basis and built at least two houses in his neighborhood.

The Office of Workers' Compensation Programs sent Mr. Brumley a letter in February 1983 making a preliminary finding that plaintiff had violated the conditions of his disability benefits because of the unreported outside income. The letter from OWCP stated that the decision was not final and that plaintiff could argue that adjustment of his benefits would "defeat the purpose of [the Federal Employees Compensation Act] or would be against equity and good conscience." *See* 5 U.S.C. § 8129. The Office also issued an order terminating plaintiff's future benefits.

Plaintiff obtained an injunction from federal district court in February 1983, staying administrative efforts by the Department of Labor to recover benefits until criminal proceedings involving the same issue were complete. The court lifted the stay in November 1983, and the administrative process resumed.

A hearing representative for the Department of Labor remanded the case to OWCP in March 1984 "for further development." He noted that the Agency must show that plaintiff's injury-related condition had ceased before it could terminate future benefits. Plaintiff produced a doctor who reported that Mr. Brumley's emotional condition continued.

The OWCP notified plaintiff by letter in December 1987 that it had again made a preliminary determination that Mr. Brumley must reimburse the Government benefits that he was paid while receiving outside income. The letter stated that the decision was not final and that plaintiff had the right to a pre-recoupment hearing. He could submit evidence or arguments if he disagreed. After considering plaintiff's arguments, OWCP issued an order terminating Mr. Brumley's benefits. A letter dated January 27, 1998 was OWCP's first formal notification that plaintiff must repay the approximately $150,000 that he was overpaid because of his failure to report outside income. Interest began to accrue on this date.

Plaintiff filed contempt charges against the Labor Department and sought an injunction in district court to prevent the Government

from recovering the benefits that were paid improperly to him. The court rejected plaintiff's motion for contempt and dismissed his case for lack of jurisdiction. Mr. Brumley appealed to the Employees' Compensation Appeals Board, which reviewed the case in October 1990. The Board noted that the case had been "dormant with respect to forfeiture and overpayment issues" because of the lawsuits and appeals that plaintiff had filed. The Board reduced the amount that Mr. Brumley owed to approximately $149,661.

The Department of Labor notified Mr. Brumley formally of these findings in February 1991 and advised him of his appeal rights under the Federal Employees Compensation Act. Soon thereafter, the Department advised Mr. Brumley that he could elect benefits under the Federal Employees Retirement Act for the periods of forfeiture under the Federal Employees Compensation Act.[1] If he made such an election, OPM would "calculate your entitlement and your overpayment will be offset by the amount to which you are entitled. Not only will this reduce the amount of your overpayment, but it will greatly reduce the amount of interest which will accrue on the unpaid balance."

Plaintiff agreed to the retroactive election about two weeks later, and agreed that defendant could "have the OPM apply the annuity as a set-off against the alleged overpayment . . . ." This process resulted in payment of approximately $75,000 of plaintiff's obligation in April 1991.

Plaintiff went back into federal court in August 1991 and asked that the Government be enjoined from making any efforts to recoup its debt. He also sought a ruling that his election of benefits was improper. The district court issued the injunction and granted plaintiff's motions for relief in December 1992. The court reconsidered in August 1993, and dismissed plaintiff's case for lack of jurisdiction pursuant to 5 U.S.C. § 8128(b).[2]

At the direction of the Labor Department, the Office of Personnel Management began collecting the balance of Mr. Brumley's debt in installments, after the court dismissed plaintiff's case in August 1993.[3] Mr. Brumley complained to OPM that he could not afford the monthly withholding. OPM determined in July 1994 that a certification required by regulations issued pursuant to the Debt Collection Act was "not acceptable."[4] OPM terminated withholding from plaintiff's account and advised Labor to refund the deductions that had been made to date. The Department of Labor returned $1500 to Mr. Brumley in August 1994.

Plaintiff filed another lawsuit in district court against the Department of Labor and against one of its employees. The court dismissed this case in April 1995, stating that "plaintiff has failed to present any evidence to support his allegations and . . . his attempts to assert causes of action under the

1. Government employees with dual entitlements are prohibited from receiving payments from both programs at the same time, but may elect either one at their discretion, prospectively or retroactively. 5 U.S.C. § 8116. When a retroactive election is made, the transferee agency reimburses the previous paying agency for funds that it disbursed during the elective period. The balance is paid to the person making the election.

2. 5 U.S.C. § 8128(b) provides that an action of the Secretary of Labor in "allowing or denying a payment" is–

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

3. The Labor Department may recover overpayments by decreasing later payments to which the

debtor is otherwise entitled. *See* 5 U.S.C. § 8129(a).

4. 29 C.F.R. 20.31–Administrative offset against amounts payable from Civil Service Retirement and Disability fund.

. . . . .

(b) When making a request for administrative offset under paragraph (a) of this section, an agency shall include a written certification that:

(1) The debtor owes the United States a debt, including the amount of the debt;

(2) The requesting agency has complied with all applicable statutes, regulations, and procedures of the Office of Personnel Management; and

(3) The requesting agency has complied with the requirements of the applicable provisions of the Federal Claims Collection Standards, including any required hearing or review.

Privacy Act and PRA are groundless. Although the court declines to impose sanctions in this case, it will carefully consider sanctions in any future cases."

Mr. Brumley elected to return to the Federal Employees Compensation Act program. This process was delayed because of his refusal to complete the necessary forms. These forms included the certification concerning outside income described earlier. Plaintiff finally sent the forms to the Department of Labor "under duress" in January 1999. The Department of Labor processed his back payments under FECA in May 1999.

When annuitants transfer retroactively from the Federal Employees Compensation Act program to the Federal Employees Retirement Act program or vice versa, their payments are recalculated. The transferee program reimburses the transferor, then pays the annuitant the amount remaining in the fund. The benefits in this case were approximately $990,500. Transferee FECA paid $496,857 to the transferor, and deducted $111,622 for the amount that Mr. Brumley still owed the Government for the overpayment. Plaintiff was paid approximately $382,000.

## DISCUSSION

The issue in this case is whether it was proper for defendant to offset or recoup the $111,622 overpayment to Mr. Brumley. Plaintiff filed a motion for summary judgment, claiming that the Government's right to collect an overpayment is controlled by the Federal Debt Collection Act of 1982. 31 U.S.C. §§ 3701–3718. Mr. Brumley argues that § 3716(c)(1) limits the Government's right of offset to ten years after the claim

arises. Defendant filed a cross-motion for summary judgment.[5]

The Government also filed a motion to dismiss for lack of jurisdiction pursuant to 5 U.S.C. § 8128(b). This section contains the broad "door-closing" language that the district court cited in declining jurisdiction in Mr. Brumley's requests for injunctions against the administrative process under the Federal Employees Compensation Act.[6]

## A. JURISDICTION

■ The Government argues that we do not have jurisdiction to question the Secretary of Labor's efforts to collect the Department's overpayment to Mr. Brumley, citing 5 U.S.C. § 8128(b). This statute was an effort by Congress to preclude judicial review of decisions by the Secretary of Labor concerning payments under the Federal Employees' Compensation Act:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. 8128(b).

This section insulates from judicial review any decision of the Secretary of Labor "allowing or denying" payments to federal employees. The Secretary's ruling in this regard is final and conclusive and not subject to review by any court. *See, e.g., Pueschel v. United States,* 49 Fed.Cl. 309 (2001), *aff'd,* 297 F.3d 1371 (Fed.Cir.2002) (Secretary's refusal to reclassify back pay award as disabili-

**5.** Rule 56(c) of this court provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of proving the absence of a genuine issue of material fact regarding an essential element of respondent's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When both parties move for summary judgment, each motion must

be considered on its own, and evaluated on its individual merits. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987).

**6.** *See Lindahl v. Office of Personnel Management,* 470 U.S. 768, 779–80 and n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (referring to 5 U.S.C. § 8128(b), compensation for work injuries; and 38 U.S.C. § 211(a), review of veterans' benefits, as examples of "unambiguous and comprehensive" language that show Congressional intent to "bar judicial review altogether").

ty compensation not subject to review by court), and *Chapman v. United States*, 204 Ct.Cl. 815, 1974 WL 5601 (1974) (no jurisdiction over claim that Secretary of Labor improperly stopped compensation payments).

The Supreme Court decided an FECA compensation case without addressing the preclusive language of § 8128(b), or discussing whether the claim was barred by the Secretary's immunity from judicial review. *United States v. Lorenzetti*, 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). The Secretary of Labor had ruled in *Lorenzetti* that an employee who had received a tort judgment under state law was required to reimburse the Federal Employees Compensation Fund for payments made on account of his disability. Section 8128(b) did not prohibit judicial review of the reimbursement issue, apparently because it did not involve "allowing or denying a payment." 5 U.S.C. § 8128(b). Payment already had been allowed in *Lorenzetti. See Paluca v. Sec'y of Labor*, 813 F.2d 524, 528 (1st Cir.1987) (section 8128(b) grants unreviewable discretion only in allowing or denying payment, not recoupment of payments already allowed).

Mr. Brumley does not allege that the Secretary acted improperly in allowing or denying payments under the program. The issue is whether defendant could recoup funds that it had paid to plaintiff because of a mistake of fact. It is a claim for return of funds that plaintiff alleges the Government withheld improperly; the debt happens to arise in connection with the Federal Employees Compensation Act. This court has jurisdiction over such a claim.

### B. SUMMARY JUDGMENT MOTIONS

■ Plaintiff's sole argument on summary judgment is that defendant's recoupment was not timely pursuant to the Debt Collection Act of 1982. *See* 31 U.S.C. §§ 3716–3718. The Act requires that the Government collect

debts by administrative offset within ten years.[7] Defendant's arguments on summary judgment are that if the Debt Collection Act applies, it requires only that collection procedure be *initiated* before the ten-year statute of limitations runs, not completed. Further, plaintiff tolled the statute by making a part payment in 1991. We do not address these arguments in depth because the ruling does not depend on whether the Debt Collection Act applies.

The Government's collection efforts were initiated well within the ten-year statute of limitation pursuant to the Debt Collection Act.[8] The language of the implementing regulation states that the debt may not have been *outstanding* for more than ten years, however. *See* 29 C.F.R. § 20.19. Defendant makes convincing policy arguments for its interpretation, but the language of the regulation seems clear.

Defendant argues that plaintiff tolled the statutory period of the Debt Collection Act, if it applies. Mr. Brumley paid approximately half of his debt in 1991, well within the ten-year period. Such a payment in fact would toll the six-year statute of limitations of 28 U.S.C. § 2415:

[E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment . . . .*

(1) to a claim under this subchapter that has been outstanding for more than 10 years;

7. 31 U.S.C. § 3716 provides:
    (a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive, judicial, or legislative agency may collect the claim by administrative offset.
    
    .  .  .  .  .
    
    (e) This section does not apply—

8. Plaintiff claims that the statute started to run in 1983. Defendant's first formal demand was in 1988, however. The Government collected half of the debt in 1991, the remainder in 1999.

28 U.S.C. § 2415(a) (emphasis added).[9] Partial payments often affect statutes of limitation and at common law and in commercial practice generally.

Mr. Brumley disputes whether his payment in 1991 was "voluntary," but this assertion has no merit. The record shows that his purpose was to avoid additional interest charges. Perhaps it was not voluntary in the sense that he did not want to repay his debt to the Government, just as many people do not wish to pay their taxes, but the record does not suggest coercion.[10]

### C. 5 U.S.C. § 8129

The Debt Collection Act includes the following provision: "Nothing in this section is intended to prohibit the use of any other administrative offset authority existing under statute or common law." 31 U.S.C. § 3716(d). Congress directed the Agencies not to invoke the unwieldy administrative setoff process of § 3716 until first using their own collection procedures. 31 U.S.C. § 3711(a).[11] For the Department of Labor, 5 U.S.C. § 8129 is such a procedure.

(a) When an overpayment has been made to an individual under this subchapter because of an error of fact or law, adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled. If the individual dies before the adjustment is completed, adjustment shall be made by decreasing later benefits payable under this subchapter with respect to the individual's death.

(b) Adjustment or recovery by the United States may not be made when incorrect payment has been made to an individual who is without fault and when adjustment or recovery would defeat the purpose of

this subchapter or would be against equity and good conscience.

5 U.S.C. § 8129.

This section does not provide that the Secretary of Labor's decisions are unreviewable. If a debtor alleged that he was not at fault, for example, or that recovery would be "against equity and good conscience," he could appeal to the courts. *See, e.g., United States v. Vetti,* 681 F.Supp. 986 (D.Conn. 1988). Mr. Brumley has not alleged that the Government's recovery of money that he received by failing to disclose outside income would be inequitable, or that it would disserve the purposes of the law. He argues only that the Government did not collect its debt within ten years.

Section 8129 does not require that a debt be recovered by the United States within ten years. Its implementing regulations state that an individual must refund an overpayment as soon as he or she is advised of it, or the Government will decrease later payments. 20 C.F.R. § 10.441(a). Plaintiff argues that these regulations require defendant to employ the procedures of the Debt Collection Act to collect such overpayments. Only § 10.441(b) mentions that statute, and that subsection addresses an entirely different situation. This case is governed by subsection (a) because Mr. Brumley is still receiving payments.

(a) When an overpayment has been made to an individual *who is entitled to further payments,* the individual shall refund to OWCP the amount of the overpayment as soon as the error is discovered or his or her attention is called to same. If no refund is made, OWCP shall decrease later payments of compensation . . . .

(b) When an overpayment has been made to an individual *who is not entitled to further payments,* the individual shall re-

---

9.  Section 2415 is a general statute of limitations on actions by the United States involving money damages. Part of the legislative history of this statute is found at S. Rep. No 1328, 89th Cong.2d Sess. 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2513.

10.  A letter dated February 28, 1991 from Mr. Brumley to OWCP states, "I have agreed to have the OPM apply the annuity as a set off against

the alleged overpayment, pending outcome of litigation over the Department of Labor scope of discretion."

11.  *See* S.Rep. No. 378 at 12, 1982 U.S.C.C.A.N. at 3388 ("The administrative set-off procedure should be used primarily as a last resort action where other administrative steps have been taken to collect the debt.").

fund to OWCP the amount of the overpayment as soon as the error is discovered or his or her attention is called to same. The overpayment is subject to the provisions of the Federal Claims Collection Act of 1966 (as amended) .... If the individual fails to make such refund, OWCP may recover the same through any available means ....

20 C.F.R. § 10.441 (emphasis added). The procedure sanctioned by § 10.441(a) makes no mention of the Debt Collection Act. It describes a common form of administrative self-help.

## D. RECOUPMENT

The purpose of 31 U.S.C. § 3716 was not to limit the Government's ability to offset debts but to "expand[ ] the Government's use of offset beyond those instances already permitted by common law or statute." *Cecile Indus. Inc. v. Cheney*, 995 F.2d 1052, 1056 (Fed.Cir.1993). *Cecile* was a contract case that did not involve FECA, but the court expressed strong support for extending the Government's authority to collect debts, not to restrict it. The Federal Circuit observed that the enacting clause of the Debt Collection Act [12] "speaks of 'additional procedures' for debt collection, not replacement or revision of existing contract law doctrines. The Supreme Court read this purpose to 'suggest[ ] that Congress passed the Act in order to strengthen the Government's hand in collecting debts.' " *Id.* at 1055 (citing *United States v. Texas*, 507 U.S. 529, 537, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993)).

The Government has always had the authority to recoup funds that it paid improperly. "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' " *Doko Farms v. United States*, 956 F.2d 1136, 1142 (Fed.Cir.1992) (citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947)) (quoting *Gratiot v. United*

*States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841)). *See also Nautilus Shipping Corp. v. United States*, 141 Ct.Cl. 391, 158 F.Supp. 353 (1958) (recoupment allowed even though plaintiff did not claim or brief it; prayer for "such other and further relief as to the court may seem just and proper" sufficient for recovery).

The Supreme Court ruled that a taxpayer was not entitled to a refund unless he actually overpaid his tax, regardless of whether the Government could have collected the tax. "Although the statute of limitations may have barred the ... collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 *modified*, 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932).[13]

The Federal Circuit ruled that the Government was entitled to recover funds irrespective of the statute of limitations, even from third parties. *Southern California Edison Co. v. United States*, 226 F.3d 1349 (Fed.Cir. 2000). "Section 2415 specifically provides that the six-year statute of limitations does not apply to the government when it is seeking to recover improperly disbursed funds." *Id.* at 1356 (citing 28 U.S.C. § 2415(f)).

An action by the Railroad Retirement Board to recover disability benefits was not subject to the six-year statute of limitations for money damages, particularly in light of a provision expressly authorizing the Board to recover erroneous payments "at any time." *King v. Railroad Retirement Bd.*, 981 F.2d 365, 367 (8th Cir.1992).

## CONCLUSION

The Office of Worker's Compensation Programs was authorized to recoup its overpayment to Mr. Brumley pursuant to 5 U.S.C.

---

12. The enacting clause of the Debt Collection Act states that its purpose is "[t]o increase the efficiency of Government-wide efforts to collect debts owed the United States and to provide additional procedures for the collection of debts owed the United States." Pub.L. No. 97–365.

13. Congress later amended a section of the Tax Code that the Court interpreted. One court questioned whether the ruling were superceded by that amendment. *See Sokolow v. United States*, 169 F.3d 663 (9th Cir.1999).

§ 8128(b). No time limitations apply to that authority. This is consistent with historic commercial practice, which permits debtors and creditors to recoup or offset their debts against one another irrespective of time limitations.

The administrative process that defendant employed in this case was not a model of efficiency. Many delays occurred, and at times officials seemed unsure which statutes, regulations, or procedures applied. This was caused partly by plaintiff's lack of cooperation. He refused to complete necessary forms and challenged defendant's efforts at every stage. The Debt Collection Act, if it applied, would not be interpreted to permit a debtor to misuse the legal or administrative process to prevent the Government from collecting its just debts.[14]

Defendant's motion to dismiss for lack of jurisdiction is DENIED. Plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED. The Clerk will dismiss plaintiff's complaint. Costs to defendant.

---

**14.** The Debt Collection Act's purpose is "[t]o increase the efficiency of Government-wide efforts to collect debts owed the United States ...." Pub.L. No. 97–365.